(No. 31681.—

MABEL E. LUCAS, Appellant, *vs.* BERNICE WESTRAY, Appellee.

*Opinion filed January 18, 1951.*

MILTON M. BLUMENTHAL, of Chicago, (JOHN S. KAV-
ANAUGH, of counsel,) for appellant.

TELLER, LEVIT & SILVERTRUST, of Chicago, (H. J.
GOLDBERGER, of counsel,) for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the
court:

Harry M. Lucas filed a petition in the circuit court of
Cook County on April 30, 1946, praying that title to cer-
tain property described therein be vested in Harry M.
Lucas, married to Mabel E. Lucas, and that an order be
entered directing the registrar of titles of Cook County,
upon the surrender of the former owner's duplicate cer-
tificate of title, to issue a certificate to petitioner as above
indicated. Before there was a hearing on the petition,
Harry M. Lucas died intestate, leaving surviving his wife,
Mabel E. Lucas, and a daughter, Bernice Westray, by a
former marriage. Mabel E. Lucas then filed her petition
alleging all of the facts in the former petition and, in addi-
tion, alleged the death of her husband and that he left
surviving petitioner, his wife, and Bernice Westray, a

daughter by a former marriage. Bernice Westray then filed an intervening petition alleging that the title to said property should be vested in her along with the widow of her deceased father. The matter being referred to the examiner of titles, report was made as to his findings and, on hearing, a decree was entered approving and confirming said report and fixing title to the premises in Bernice Westray as the owner of an undivided 5723/13500th interest and in Mabel E. Lucas, as the owner of an undivided 7777/13500th interest. The decree then directs the registrar of titles to issue a certificate of title to the parties as above set forth. From this decree, Mabel E. Lucas appeals.

The record discloses the property in controversy as "The North Seventeen (17) feet of Lot Fifteen (15) and Lot Sixteen (16) (except the North fourteen (14) feet thereof) in Block Seven (7) in Kyle's Subdivision of Blocks One (1), Two (2), Seven (7) and Eight (8) in Helm and Hawes' Subdivision of the North Fifteen (15) Acres of the South Forty-five (45) Acres of the West Half (½) of the Southeast Quarter (¼) of Section twenty-seven (27), Township Thirty-eight (38) North, Range fourteen (14), East of the Third Principal Meridian" in Cook County, Illinois, and it was registered in the name of Susan Clough and a certificate of title issued to her.

By mesne conveyance the title passed and became vested in Mary A. McDougall, a widow, and on March 13, 1935, Mary A. McDougall executed and delivered a certain trust deed to the Chicago Title and Trust Company, as trustee, securing her principal note for $2200, which was duly registered in the office of the registrar of titles of Cook County. On April 25, 1939, she executed and delivered her quitclaim deed to the real estate to William Howe, which deed was recorded in the office of the recorder of deeds of Cook County on April 27, 1939. This deed, however, was not registered in the office of the registrar of titles. On the date of the delivery of the real estate to

William Howe, a bachelor, he executed and delivered his quitclaim deed, conveying the premises to Mary A. McDougall and Harry M. Lucas, in joint tenancy, which deed was recorded in the office of the recorder of deeds of Cook County, but was not registered in the office of the registrar of titles. Mary A. McDougall died testate on May 19, 1939, leaving her surviving as her sole heir Harry M. Lucas, who, under the recorded deeds, was the surviving joint tenant of the real estate. On April 17, 1945, Harry M. Lucas married Mabel E. Lucas, both of whom resided together in the aforesaid premises. Shortly after that date, Mrs. Lucas made a payment of $1200 on a former mortgage which was then existing on the property, leaving a balance of $1000. On February 21, 1946, Harry M. Lucas and Mabel E. Lucas, his wife, executed a quitclaim deed conveying the premises to Pearl M. Zulfer, who, on the same date, made her quitclaim deed conveying the same premises to Harry M. Lucas and Mabel E. Lucas, in joint tenancy. On the same date, Mabel E. Lucas paid to R. C. Crawford, the holder of the mortgage, the balance of $1000, as payment in full, plus accrued interest, eliminating the indebtedness on the property. The deeds and cancelled mortgage papers were then delivered to R. C. Crawford, a licensed real-estate broker, for recording purposes. He brought the deeds to the office of the registrar of titles of Cook County for registration, but registration was refused because the certificate of title was in the name of Mary A. McDougall, the deeds whereby Harry M. Lucas came in title having been recorded in the recorder's office of Cook County rather than registered in the office of the registrar of titles. When registration was refused, Harry M. Lucas filed his petition in the circuit court of Cook County, for the purpose of carrying out and completing the transfer of the real estate to himself and Mabel E. Lucas, as joint tenants. The petition prayed that an order and decree be entered finding title in Harry M. Lucas and directing the

registrar of titles to issue a certificate of title to him. The petition was referred by the court to one of the examiners of title, but before the hearing Harry M. Lucas died on May 25, 1946. On August 21 of the same year Mabel E. Lucas filed her petition in the circuit court of Cook County, praying that an order and decree be entered finding title in Mabel E. Lucas and directing the registrar of titles to issue a certificate of title to her. Bernice Westray, the daughter, was made a party respondent to this petition and a summons was issued. Thereafter, she filed an intervening petition, alleging that for a long time prior to his death Harry M. Lucas was in ill-health and had a paralytic stroke which affected his mind and caused him to lose his mental faculties; that by reason thereof he did not know the extent of his estate, who his heirs were and could not knowingly convey his property, and for that reason title to the real estate should be vested in Bernice Westray, the daughter.

A hearing was held before the examiner of titles and after his report a decree was entered which found, among other things, that Harry M. Lucas had been in ill-health a long time prior to his death, that he had a paralytic stroke, and that registration of the deeds to create a joint tenancy in Mabel E. Lucas was properly refused; that Harry M. Lucas was unable to conduct his personal affairs and to be employed in gainful occupations; that a joint tenancy was not a fair disposition of the property, as it excluded his daughter, Bernice Westray, from the fair share in the property that she would have derived by the law of descent were it not for this attempt to secure the property while acting in a fiduciary capacity, not in the interest of the invalid owner of the property and his offspring. It was further held by the decree that the attempted conveyance was, at best, only to secure the advances of money made by the said fiduciary in behalf of her invalid husband; that the premises are valued at approximately $13,500, and that the interest of Mabel E. Lucas, apart from the title which

appears to be defeasible on equitable grounds, amounts to $2610 for advances to Harry M. Lucas, plus $1000 homestead, plus dower of one third of $12,500, or $4167, making a total of $7777. The decree further held that a certificate of title should be issued, showing Mabel E. Lucas as the owner of an undivided 7777/13500th interest and Bernice Westray as the owner of an undivided 5723/13500th interest. The decree then directs the registrar to issue a certificate of title to Mabel E. Lucas and Bernice Westray in the interests as above set forth.

It is urged by the petitioner, appellant here, that the delivery of the deed gives the grantee the right to have the title registered; that the physical condition of the grantor had no bearing on his mental capacity and that there was no presumption of a fiduciary relationship between husband and wife. It is appellant's contention that it is not necessary to immediately record or register a deed, as, properly executed and delivered, it is a good conveyance, and the case of *Williamson* v. *Williamson*, 306 Ill. 533, is cited wherein a deed from a mother to a son was made which the son recorded four years later. It was there held that a title passed when the deed was executed and delivered, without the reservation of any right to recall it. Recording the deed was not essential to vest title in the grantee, but served as notice to others that the title was in the defendant. It is unnecessary to discuss this proposition of law, as the failure to record does not affect a deed in its operation as a conveyance. It takes effect upon its delivery. Appellant also cites the case of *Naiburg* v. *Hendriksen*, 370 Ill. 502, which held, "an unconditional delivery of a deed to land is sufficient at common law to pass title and will, under the Torrens Act, give the grantee a right to have title registered in him, regardless of the death of the grantor a short time thereafter." Appellant's position is that as long as there was no question of delivery of the deed to Mrs. Lucas, then, if the law was properly followed,

the examiner of titles in his report and the trial court in its decree should have allowed the registrar of titles to issue a certificate in the name of Mabel E. Lucas.

If this was all that the record presented, we would have no difficulty in the determination that the trial court should have directed the registrar of titles to issue a certificate. However, the decree advances the theory that the conveyances were to secure advances made by Mrs. Lucas. The evidence discloses this was denied by appellant and Richard C. Crawford, a licensed real-estate dealer, who handled the transactions, and we do not find any other evidence on which such a finding could be justified. The deeds disclose a consideration of one dollar and other good and valuable consideration. There apparently was sufficient consideration to support the deeds.

As to the physical condition of the grantor bearing on his mental capacity, Richard C. Crawford, who was called as a witness, and who was apparently disinterested, testified that he lived at 2116 West Marquette Road, Chicago, that he was in the real-estate business, licensed by the State of Illinois and city of Chicago, and that he had held such license by the State for about thirteen years. He identified the quitclaim deed from Harry M. Lucas and Mabel E. Lucas, his wife, to Pearl M. Zulfer, dated February 21, 1946, and also the deed from Pearl M. Zulfer to Harry M. Lucas and Mabel E. Lucas, not as tenants in common, but as joint tenants. He further testified the deeds were delivered on that date. Going over his testimony in detail, we do not find anything other than normal people making a deed in the normal way, and nothing appears that would indicate any irregularities in the transaction.

Crawford further testified he had known Lucas for about ten years prior to February, 1946; that in February, 1946, Lucas knew right from wrong, was able to speak clearly and knew what he was doing. If a person is capable of understanding, in a reasonable manner, the nature

and character of the transaction in which he is engaged and of transacting ordinary business affairs in which his interests are involved, he is competent to dispose of his property by deed. *Masterson* v. *Wall,* 365 Ill. 102; *Thatcher* v. *Kramer,* 347 Ill. 601; *Valbert* v. *Valbert,* 282 Ill. 415; *Greene* v. *Maxwell,* 251 Ill. 335; *Sears* v. *Vaughan,* 230 Ill. 572.

We have gone over the record as to Lucas being a patient in the Illinois Central Hospital and the testimony of his daughter as to his condition, and we are of the opinion there was no impairment of his mental faculties sufficient to set aside the deeds.

As to the question of a fiduciary relationship, we do not find from the record that such relationship existed. A fiduciary relationship between husband and wife does not exist as a matter of law and the necessary proof must be made in this respect, which we do not find evident here.

Bernice Westray urges in support of her intervening petition and in support of the decree rendered in her favor, that the findings of fact as set forth in the decree are conclusive, for the reason that under the Torrens Act, upon the filing of an application for an original or a subsequent registration, the matter is referred to an examiner; that his function is, in effect, that of a master in chancery and the rules of procedure applicable to a master are applicable to an examiner, and, as no exceptions were taken before the chancellor as to the findings of the examiner, they cannot now be raised on appeal. In support thereof the cases of *Rogers* v. *Tyley,* 144 Ill. 652, *Gage* v. *Consumers' Electric Light Co.* 194 Ill. 30, and *Glos* v. *Hoban,* 212 Ill. 222, are cited. The *Tyley case* refers to a case under the "Burnt Records Act," which opinion was filed in this court before the act concerning land titles, under which we are now proceeding, was enacted. In the *Gage case* we have more definite authority that the rule with reference to the report of a master in chancery applies to the report of an

examiner of titles. In the *Glos case* we held that an objection to the examiner's report is in the nature of a special demurrer and must point out the grounds of objection with such clearness and certainty as to call the attention of the court to the particular alleged error which it is desired to have reviewed. It is true the application must be made to a court of chancery jurisdiction, but as to technical procedure we are confronted with a special statutory proceeding and attempting to classify the procedure on the basis of analogy has caused some confusion. In the instant case, however, we find objections filed to the report of the examiner and, while they might not appear in great detail, the objections are made to the examiner's findings that there was no evidence or presumption of law that appellant acted in a fiduciary capacity, that there was no evidence that Harry M. Lucas was unable to conduct his personal affairs, and that such report was incorrect in that there was no evidence that the conveyance by Harry M. Lucas was in recognition of advances made by Mabel E. Lucas. In the main, these matters control the case, and the motion of appellee to overrule the objections, and later a motion for a new trial, must have given to the court fully the objections raised to the decree entered by him in approving and confirming the report of the examiner. No objections seem to have been made to the evidence as offered on either side and we are of the opinion all of the evidence is before us for consideration.

Counsel for appellee then contends that, even where objections have been properly presented to a master's report, the court will not overrule same unless the decree is contrary to the manifest weight of the evidence. This seems to present the principal question. In support of appellee's position, the case of *Pasedach* v. *Auw,* 364 Ill. 491, is cited. In this case a complaint was filed in the circuit court of Cook County, seeking a decree declaring void, on account of fraud and material alteration, a deed conveying

certain property to the appellants as tenants in common, which was submitted to a master in chancery for a report. We there said, "The master in chancery saw the witnesses and heard them testify. It was his province in the first instance to determine the facts. While his finding of facts does not carry the same weight as the verdict of a jury, nor of a chancellor where the witnesses have testified before him, yet the master's findings are entitled to due weight on review of the cause. (*Keuper* v. *Heirs of Mette,* 239 Ill. 586.) His conclusions as to the facts have been approved by the chancellor. In that situation we are not justified in disturbing the findings unless they are manifestly against the weight of the evidence. *North Side Sash and Door Co.* v. *Hecht,* 295 Ill. 515; *Klekamp* v. *Klekamp,* 275 Ill. 98."

More fully as clarification of the weight to be given a master's report when controverted questions have been presented, we said in the later case of *Jones* v. *Koepke,* 387 Ill. 97, citing other cases, "We are not unmindful of the rule that weight should be given to the findings of a master on controverted questions of fact where the witnesses have testified orally before him. His finding, however, on such questions, and the weight to be given to such finding, depend upon the record in each particular case. This court has never adopted the rule that the master's report is to be given the same effect as the verdict of a jury in a case where the parties have the right to have the issues of fact determined by a jury. In a chancery case the facts are found by the court and the master's report, while *prima facie* correct, is of an advisory nature only. The facts are all open for consideration, in the first instance, by the trial court and afterwards by this court, in case of an appeal. Without regard to the finding of the master upon any particular question of fact, the ultimate and final question in this court is, Was the decree rendered by the court a proper one under the law and the evidence?"

We have carefully analyzed this evidence which has heretofore been referred to and there is but little, if any, evidence that the deeds were signed and delivered other than in the normal processes, or that the physical condition of Harry M. Lucas was such as to prevent him from conducting his personal affairs.

We are of the opinion the findings are not supported by the evidence and therefore the decree is reversed and the cause remanded, with directions to enter an order directing the registrar of titles of Cook County, upon production of the owner's duplicate certificate 125218, to cancel the same and issue a certificate of title to Mabel E. Lucas in accordance with the prayer of her petition, and to enter any other necessary orders in accordance with our views herein expressed.

*Reversed and remanded, with directions.*