Stewart *v.* Hooks (et al., Appellant).

Argued January 6, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Perrin C. Hamilton,* for appellant.

*Abraham Wernick,* with him *Leonard B. Rosenthal,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, February 13, 1953:

Does a wife occupy such a confidential relation to her husband that equity will declare her a constructive trustee of land which she receives from him upon her oral promise to reconvey it upon request? The appeal raises for the first time in Pennsylvania this question which may have grave effect on the certainty of recorded titles to real property. The learned chancellor in the court below held the relation to be confidential and imposed a constructive trust in favor of the husband. This appeal questions that ruling.

Reuben Hillyard Stewart filed a complaint in equity against the executrix of the estate of his deceased wife, Daisy Stewart, and her grandson, Charles N. Johnson, alleging that he was the beneficial owner of land which his wife had devised to the grandson. At the trial Mrs. Rebecca McFadden Benson, a conveyancer, testified that the deceased Mrs. Stewart had acquired title under the following circumstances: in March of 1932, the plaintiff and his wife consulted Mrs. Benson's employer, Herbert E. Millen, Esquire, (now Judge of the Municipal Court of Philadelphia) and plaintiff explained that he wanted to transfer certain properties of which he was owner to his wife so that he would no longer be bothered by friends asking him to pledge the properties as bail. Mrs. Benson testified that this explanation was made in the presence of Mrs. Stewart, and that the latter agreed that she would reconvey the property to her husband whenever he desired it. She further testified that Stewart said he was conveying to his wife "because he

said he had confidence in her and he knew everything would be done as he wanted it."

Plaintiff claims, *inter alia,* that the oral agreement alleged in his bill of complaint was admitted by defendants in their answer. It is clear that any admission contained in the original answer was repudiated by present counsel soon after his representation of defendants began. He filed an amendment to which plaintiff's counsel agreed by stipulation. Plaintiff contends that even though the statements in the original answer lose their force as pleadings in the case by virtue of the amendment, they nevertheless remain in evidence as admissions. This is undoubtedly the law: *Easton School District v. Continental Casualty Co.,* 304 Pa. 67, 72, 155 A. 93. But, as we there said, such admissions are "capable of explanation . . ." and "sufficient to make the question . . . one for the jury." Considered in this light, it is clear that little weight can be given to the admission of an oral agreement which was made in the original answer. In the first place, neither of the defendants has ever claimed any personal knowledge of the circumstances which led up to the conveyance of the property by plaintiff to his wife. On the contrary, they have maintained throughout that, since the death of Daisy Stewart, plaintiff is the only one living who knows what actually happened between plaintiff and his wife in 1932. Defense counsel has repeatedly stated that "the strength of the defense is in the inherent weakness of the plaintiff's case." In view of their avowed ignorance of the facts, defendants' admission carries scant power of persuasion. Furthermore, any common sense appraisal of the defendants' position as revealed by all the pleadings leaves no doubt that it was nothing more than an oversight of counsel which occasioned the admission in the original answer. It would be legal sophistry, reminiscent of an age long past, to

determine the rights of litigants on such technicalities of pleading. The same may be said of plaintiff's argument that defendants may not rely on the Statute of Frauds because they did not plead it in their original answer although it was properly set forth under the heading of New Matter in the amendment.

We likewise find little merit in plaintiff's argument that a confidential relation is here established as matter of fact by Mrs. Benson's testimony, already quoted, that plaintiff "said he had confidence in her and he knew everything would be done as he wanted it." This is the only testimony in the entire case to indicate plaintiff's confidence in or reliance upon his wife. Confidence of this character is obviously present in every case where title is transferred upon an oral promise to reconvey. The Statute of Frauds would wholly fail to render unenforceable such an oral promise if it could be circumvented merely by having the transferor say to the transferee in the presence of a third party: "I have confidence that you will reconvey this property when I ask you to do so."

The contention that a constructive trust should be created by the court whenever one person reposes such confidence in another as to transfer property upon an oral promise to reconvey (which is the rule suggested by comment c, Restatement, Trusts, §44) was explicitly rejected in *Brunier v. Stanert,* 369 Pa. 178, 85 A. 2d 130. We there said through Mr. Justice CHIDSEY (p. 185): "Acceptance of the quoted comment [c] as a correct enunciation of the law in Pennsylvania would necessitate judicial assumption of the legislative prerogative; for the salutary prohibition of the Statute of Frauds regarding parol trusts of real estate would be repealed just as surely as by a statutory repeal thereof by the Legislature itself. Further, this Court would be required to overrule, at least by necessary implication, the

well established principle that oral trusts are viewed with disfavor. This Court has never held that comment c. of §44 of the Restatement of Trusts was accepted in *toto* as the law in Pennsylvania. The extent to which that portion of the Restatement has been accepted as a statement of the law is well illustrated in Drob et al., Admrs., v. Jaffe, supra, where Mr. Justice HORACE STERN at page 300 recognized that a confidential relationship is not limited to any particular association of parties '. . . but exists wherever one occupies toward another such a position of *advisor or counsellor* as reasonably to inspire confidence that he will act in good faith for the other's interest: . . .'. (Emphasis supplied)"

The rule thus stated is supported by the analysis made by leading text-writers of the reason for imposing a constructive trust when a confidential relation is abused. See 3 Bogert on Trusts and Trustees (1946) section 482, p. 82: "Equity will never bind itself by any hard and fast definition of the phrase 'confidential relation.' It will not list all the necessary elements of such a position. It desires to reserve liberty to apply the doctrine whenever it believes that a suitable occasion has arisen. . .

"In declaring a relation technically 'confidential,' the courts lay stress on various factors. There is always, of course, the actual placing of trust and confidence on at least one occasion, and often such reliance has been exhibited through a series of months or years. In some cases this imposition of confidence seems to be the sole foundation for the finding of a confidential relation. But generally there is great disparity of position, in addition to the actual instrument. The party who claims to be a cestui of the confidential relation is in a weak position because of advanced age, or youth, or lack of education, or ill health, or mental

weakness. Frequently also the parties are related by blood or marriage in a close degree so that the imposition of great trust and the letting down of all guards and bars is natural."

65 C. J. Trusts section 228: "In general, a confidential relation, or fiduciary relation, the two terms being ordinarily used interchangeably, within the meaning of the rule that a constructive trust arises from the abuse or violation of such a relation, exists wherever confidence is reposed on one side and there is a resulting superiority and influence on the other. It has been said that there is no invariable rule which determines the existence of a confidential relationship, but that ordinarily there must be not only confidence of the one in the other, but also on the part of the former some inequality, dependence, weakness, want of knowledge, or other conditions giving to the latter some advantage over the former."

4 Pomeroy's Equity Jurisprudence 138: "Thus constructive trusts have been imposed where the relation between the parties was that of principal and agent, attorney and client, husband and wife, parent and child, grandparent and grandchild, and the like in respect of transactions where the promisor was the dominant party. . . . A fiduciary relation exists where there is a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interest of the one reposing the confidence; it exists where confidence is reposed on the one side and the resulting superiority and influence are found on the other side." For a careful analysis of our own cases on confidential relations, see 97 U. of P. Law Review 712.

While we thus find substantial support for the view that mere existence of family relationship does not justify the recognition of a confidential relation, it

should be noted that there is considerable contrary authority in the decisional law of sister states. A characteristically eloquent statement of this view was made by Chief Judge CARDOZO for the Court of Appeals of New York in *Foreman v. Foreman*, 251 N. Y. 237, 167 N. E. 428, which involved a factual situation substantially similar to the one now before us: "The rule is now settled by repeated judgments of this court that the statute [of Frauds] does not obstruct the recognition of a constructive trust affecting an interest in land where a confidential relation would be abused if there were repudiation, without redress, of a trust orally declared. . . .

"The wife would have been guilty of an abuse of confidence by disclaimer during life. Her heir will not be suffered to nullify her submission to the call of equity and honor by disclaimer after death. . . .

"Enough and ample there is here to put the case for the plaintiff in the field uncovered by the statute. His equity does not grow out of payment and nothing more. It is reinforced by words of promise, by the relation of man and wife, and by unequivocal acts of confirmation and performance. In such circumstances, the plastic remedies of the chancery are moulded to the needs of justice."

It will be noted from the quoted excerpts that Chief Judge CARDOZO treated the question as one of settled law in New York. A review of earlier cases referred to discloses that the courts of that state have been more inclined than our own to term a relation confidential. In *Goldsmith v. Goldsmith*, 145 N. Y. 313, 39 N. E. 1067, a son was declared a constructive trustee for his mother, and in *Sinclair v. Purdy*, 235 N. Y. 245, 139 N. E. 255, a sister was held constructive trustee for her brother. Chief Judge CARDOZO, delivering the opinion of the court in the latter case, said (139 N.E. 258) : "He found, as

he thought, in the bond of kinship a protection as potent as any that could be assured to him by covenants of title."

These cases disclose a public policy fundamentally different from that which has always obtained in Pennsylvania. New York has apparently considered a bond of kinship sufficient to justify enforcement of an oral promise to reconvey despite the express prohibition of the Statute of Frauds. Our own courts have been more reluctant to defy the statutory mandate. As was so well said by Mr. Justice CHIDSEY in *Brunier v. Stanert*, supra, we have recognized a confidential relation only where one person is shown as matter of fact to be counsellor or advisor for another.

This policy has been reflected in other areas of the law where the question of confidential relation is important. In reviewing will contests we have frequently decided that persons in close family relation enjoyed no confidential relation. See: *Leedom v. Palmer*, 274 Pa. 22, 117 A. 410 (brother and sister); *Aggas v. Munnell*, 302 Pa. 78, 152 A. 840 (father and daughter); *Cookson's Estate*, 325 Pa. 81, 188 A. 904 (mother and daughter); *Royer's Estate*, 339 Pa. 423, 12 A. 2d 923 (mother and son); *Cressman Estate*, 346 Pa. 400, 31 A. 2d 109 (husband and wife). In *Leedom v. Palmer*, supra, Justice KEPHART expressed the rule in these words (p. 25): "Confidential relation is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed; in both an unfair advantage is possible. When these circumstances appear, the law presumes the transaction void, unless the party claim-

ing the benefit of such transaction shows affirmatively that no deception was used and the act was the intelligent and understood act of the grantor, fair, conscientious and beyond the reach of suspicion. No precise language can define the limits of the relation or fetter the power of the court to control these conditions."

Cases from other jurisdictions indicating a similar approach to the problem include the following: *Lucas v. Westray,* 408 Ill. 243, 96 N. E. 2d 623, 626: "As to the question of a fiduciary relationship, we do not find from the record that such relationship existed. A fiduciary relationship between husband and wife does not exist as a matter of law and the necessary proof must be made in this respect, which we do not find evident here."

*Snell v. Seek,* — Mo. —, 250 S. W. 2d 336, 342: "A proper and usual husband and wife relationship in and of itself denotes mutual confidence and, in one sense, each spouse is in a 'fiduciary' relationship to the other. It is necessarily something beyond this relationship, however, which must exist as between husband and wife before it may be said that either is the fiduciary of the other within the meaning of 'fiduciary' or 'confidential' relationship necessary to be established as a basis for an inference or a presumption of undue influence."

*Manos v. Papachrist,* — Md. —, 86 A. 2d 474, 476: "Ordinarily the relationship of husband and wife is a confidential one. Of course, in any given case it is a question of fact whether the marital relationship is such as to give the husband dominance over his wife or to put him in a position where words of persuasion have undue weight."

The Court of Chancery of New Jersey in *Burger v. Burger,* 105 N. J. Eq. 403, 148 A. 167, compelled a husband to reconvey property to his wife and referred

to the trust a wife ordinarily reposes in her husband as follows: "The most dominant of all relations is that of the husband over the wife. . . . The relation is so close, the trust of the wife so absolute, her dependence so entire, it may be her fear so abject, while the dominion of the husband is so complete, his influence so insidious yet so controlling, that equity regards all such transactions with a jealous care and subjects them to the severest scrutiny." The basis for such a rule is that a *husband* is presumed to be dominant, with the wife ordinarily dependent upon his will. But where a *husband* conveys to a wife, there exists no such presumption. This Court has long recognized a "general presumption existing in all dealings between husband and wife that real or personal property bought in the name of the wife with the husband's funds, or transferred from husband to wife without consideration, is a gift to her": *Werle v. Werle,* 332 Pa. 49, 51, 1 A. 2d 244. See also: *King v. Lemmer,* 315 Pa. 254, 173 A. 176, and *Christy v. Christy,* 353 Pa. 476, 46 A. 2d 169. If we are to continue to recognize this *dependence* of wife upon husband, it would obviously be inconsistent to adopt a new rule which would presume a *dominance* of wife over husband. Therefore, despite the existence of eminent authority to the contrary, we feel that it would be against the declared policy of this Commonwealth to accept plaintiff's contention that the relation of wife to husband is confidential as matter of law for the purpose of constructing a trust.

Since there is nothing in the pleadings or proof to indicate that plaintiff's wife occupied the position of advisor or counsellor, it was error for the court below to conclude that she stood in a confidential relation to him. Absent such proof, the Statute of Frauds is a complete bar to enforcement of this oral promise to reconvey.

The decree is reversed and the bill of complaint is dismissed at the cost of appellee.