## Warren v. Warren

*David Kanner*, for plaintiff.
*Michael Goldman*, for defendants.

SAYLOR, J., June 24, 1971.—By bill in equity, plaintiff seeks to obtain a reconveyance of premises 2237 Benson Street, Philadelphia, from her son and daughter-in-law. The son does not contest the claim. The daughter-in-law, who is estranged from her husband, does contest it. She asserts that the property was given to her and her codefendant by plaintiff upon their marriage. Plaintiff claims the property is hers, that the title thereto was transferred to her.

within a month of the original conveyance to defendants and title remained in her for nearly five years until it was transferred to defendants merely to assist them in purchasing and financing a new home.

This law suit would never have been instituted had defendants continued to live in harmony. Plaintiff denies that she gave the property or any funds with which to purchase it as a wedding gift to defendants. On the contrary, plaintiff stated under oath that she gave no wedding present, only to testify later in the trial that she gave her daughter-in-law a diamond ring.

Plaintiff has engaged from time to time in the purchase of real estate and may have been a party to the transferring back and forth of the house in order to carry out transactions in which she was interested. While her testimony was uncertain in some areas, she did produce paid checks on her bank account showing that over a period of years she paid the various carrying charges on the house. While she lived there in an apartment set apart from defendants' quarters, she may have made such payments by way of rent. But it is significant that despite the fact that defendants were obligors on the bond and mortgage given by them at settlement when they took title, it was plaintiff and not defendants who assumed and bore the major burden of paying the carrying charges due monthly to the mortgagee.

Defendants took title to 2237 Benson Street, a duplex house, in their names as tenants by the entireties by deed on October 15, 1962. Within a month, on November 21, 1962, defendants conveyed the property to plaintiff. For nearly five years, title remained in plaintiff. Moreover on July 31, 1967, defendants gave plaintiff a second deed with a more precise and accurate description of the property.

Within a month, plaintiff reconveyed the property to defendants. Plaintiff testified that this was done on a temporary basis to assist her son and daughter-in-law to finance their purchase of another home on Hendrix Street which, being larger than the Benson Street property, would be more appropriate for a growing family. That deed to defendants was dated August 18, 1967. Defendants separated early in 1969 and are getting a divorce. This suit was instituted on August 12, 1969.

The daughter-in-law testified that the $5,000 advanced by plaintiff when the Benson Street house was purchased was given by plaintiff as a wedding present. The consideration for the purchase was $20,500 and defendants gave their mortgage for $16,400.

Dale Warren testified that his mother wanted to buy the Benson Street house but the real estate man said it was doubtful if she could pay the mortgage. Presumably, it was for that reason that plaintiff, in advancing the $5,000, arranged that defendant take title and give a mortgage secured by the property.

Dale Warren also testified that when, after holding title for nearly five years, his mother transferred title to the Benson Street house to him and his wife, she did so only to enable them to finance the acquisition of their new home on Hendrix Street which was purchased in September 1967. He added that his mother has paid all carrying charges on the Benson Street house. His wife, however, testified that she and her husband made some mortgage payments.

Carole Warren also testified that she and her husband put up about $1,000 when the house was bought and that her mother-in-law made a gift of four to five thousand dollars at the time of the purchase. Carole Warren said that the house did not belong

to plaintiff and that she had no recollection of ever transferring title to her. This testimony was such as to cast doubt on her credibility. She testified that she was at the settlement for the Benson Street house and that the signature on the settlement sheet for October 15, 1962, was hers. But when the deed of November 21, 1962, conveying the property to plaintiff was shown to her, she said that it was not her husband's signature that was on it and she could not say it was hers but would not deny that it was. She also said she did not remember signing the deed that conveyed title to the Benson Street house to plaintiff on July 31, 1967, and that the signature on the deed does not look like hers but she did not deny that it was hers. This witness also said she did not remember the various deeds but admitted that when her husband asked her to sign the July 31, 1967, deed (confirming title to land transferred to plaintiff on November 21, 1962) she did so.

Dale Warren identified the signatures on the 1962 deed as his and his wife's signatures and said the signatures of the witnesses were those of the real estate agents in whose office the deed was signed.

Since Carole Warren has had a high school education and presumably can read and write, it seems clear that she executed the deeds despite her hesitation in identifying her signatures to them. Her assertion that she did not understand them means nothing, since she admitted that when they were presented to her she executed them. It is found as a fact that both defendants executed the deeds of November 21, 1962, and July 31, 1967, conveying the Benson Street property to plaintiff and that, by virtue of such title record, title to said property was held by plaintiff until August 18, 1967, when, after nearly five years, title was reconveyed to defendants.

Catherine T. Warren, plaintiff, testified that she sold her house on Gilham Street in order to buy the Benson Street house. She said she used defendants as a "straw" because at her then age she could not get anyone to take a mortgage. The money she advanced was not a gift and so the property was deeded to her within a month. She also said that defendants agreed to return the Benson Street house to her after they acquired the Hendrix Street property. After the settlement for the Benson Street house she moved into it, painted it and repaired it. She paid rent by way of making payments on the mortgage. She leased a portion of the house to a tenant and collected the rents through her son and made payments to the mortgagee. Her records show that her payments to the mortgagee totaled $5,298.74.

Dale Warren testified that his mother usually took care of everything relating to the house and that he took credit on his income tax returns for depreciation and repairs. He said that he received no rent from his mother as a tenant but later stated that she paid $75 a month as rent. Following separation from his wife, he moved back into the Benson Street house.

Stephen A. Miller testified that he was the tenant of a portion of the Benson Street house and executed a lease with defendants to whom he paid rent while he was the occupant from October 1, 1967, until he moved out in February 1970. He said that Dale Warren told him that his mother owned the property but as far as he, as the tenant, was concerned, defendants were the owners as he gave the rent checks to Dale Warren.

Carole Warren, recalled to the stand, testified that her mother-in-law paid $75 a month rent for her quarters in the house and Miller paid $200 for his

portion of the house. These payments made it possible for defendants to pay on the mortgage $156 a month. She denied that she had ever promised her mother-in-law to reconvey the property to her and that she, her mother-in-law, never asked the witness to make such a conveyance. Carole testified that she made monthly payments of $156 to the mortgagee but did not offer any written evidence of such payments.

It was stipulated by counsel that if a title company official were called as a witness, he would testify that the title insurance policy for the property was issued in favor of defendants and that it does not show any interest of plaintiff.

It was also stipulated that plaintiff's income tax returns did not list the Benson Street property and that on the returns for the years from 1962 to 1966 plaintiff did not claim any deductions for depreciation or carrying charges, including taxes, utilities and repairs. On the other hand these tax returns did list other properties owned by the taxpayer which contained claims for such types of overhead charges thereon.

From the rather confused record of this case, it is apparent that in support of the claim of plaintiff, there is evidence of her status as real owner of the property in that (1) she held record title to it for nearly five years, and (2) she paid substantial amounts of money to the savings and loan association which held defendants' mortgage on the property.

For the position taken by Carole Warren as a defendant, there is evidence of the status she claims for herself and Dale Warren as owners of the property in that (1) title was originally taken by them upon its purchase and such title was insured to them; (2) they made substantial payments to the savings and

loan association which held their bond and mortgage secured by the property; (3) they leased a portion thereof to a tenant who paid rent to them; (4) they have held title to the property from August 18, 1967, to date and (5) claim upon them to transfer title to plaintiff was not made until they had separated and an action was instituted to procure a reconveyance of the property to which they have had legal title for two years prior to suit; (6) plaintiff paid rent for that portion of the premises which she occupied albeit such payments may have been made by way of checks issued by plaintiff to the mortgagee, and (7) plaintiff in making out her income tax returns did not make any claim for deductions based upon her financial outlays for carrying charges on the property or for depreciation thereof, although she did make such claims with respect to other properties of which she was the owner.

In her complaint, plaintiff asks that (1) defendants be declared to hold the Benson Street property as trustees for plaintiff; (2) they be restrained from in any way disposing of or encumbering the property, and (3) they be ordered to execute and deliver to plaintiff a deed to the property in fee simple, subject only to such valid encumbrances as may have existed at the time defendants took title thereto.

It is not clear whether plaintiff seeks to impose upon the property known as 2237 Benson Street in Philadelphia a resulting or a constructive trust.

It is clear that there is no written evidence of a trust established by defendants. If there be a trust, it is an oral trust. In Brunier v. Stanert, 369 Pa. 178 (1952), the Supreme Court said, page 183, "We recognize . . . the further principles that oral trusts are viewed with disfavor by the law, that a proponent of such trust is under a heavy burden of proving the

same by evidence which is direct, positive, express and unambiguous." The court said that it was "unable to agree with the court below that a confidential relationship has been established and conclude, therefore, that the burden of establishing a parol trust which falls within the exception of the Statute of Frauds has not been sustained." The adjudication of the court below directing reconveyance of property to plaintiff was reversed.

In Sechler v. Sechler, 403 Pa. 1 (1961), the court said that in considering whether a record proves the existence of an implied trust in land the court starts with the presumption of right which exists in favor of the grantee in whom the legal title is lodged. Further, the court said, at page 7, "unless the evidence of the existence of an oral trust is of the highest probative value, equity should not act to convert an absolute ownership into an estate of lesser quantity."

In the matter presently before the court, it has not been established that any oral promise to hold the property in trust for plaintiff was made at the time the property was last conveyed to defendants on August 18, 1967. There is no precise testimony that either of defendants promised to make such a conveyance. Conversations between plaintiff and her son, who now supports her claim, lack any real probative value as to the existence of such an oral understanding. There must be such an understanding to serve as a basis for a constructive trust.

A constructive trust must be established and arises only when there is a breach of a confidential relationship or where a transfer was procured by fraud: Restatement of Trusts, (2d) §44. As to the matter of fraud, there is no evidence whatsoever of its having been committed. While in her complaint

plaintiff charges that defendants in July 1967 fraudulently told her that they did not have sufficient equity to secure a mortgage for purchase of the Hendrix Street property and stated that they would need title to the Benson Street property to show sufficient equity to secure a mortgage on the Hendrix Street property, there was no offer of proof of such charges. Actually, plaintiff admitted that her son and daughter-in-law were not guilty of fraud and did nothing to deceive her.

Nor does plaintiff complain of a breach of a confidential relationship between her and defendants. There was no confidential relationship. The existence of a close family relationship does not, in itself, justify the recognition of a confidential relation: Stewart v. Hooks, 372 Pa. 542 (1953). As a matter of fact, plaintiff was no novice in the purchase and conveyance of real estate and she dealt consistently with her son-in-law who was engaged in the real estate business.

Plaintiff relies upon the case of Silver v. Silver, 421 Pa. 533 (1966), where the court found that a confidential relationship existed and a fiduciary obligation was imposed by the court upon the breach of a promise to reconvey property to plaintiff. That is not the situation here. Defendants were not advisors or counsellors to plaintiff. She was well aware of what she did and why she did it when, upon paying a portion of the purchase price for the Benson Street house in 1962 and when after holding title to it for five years, she reconveyed it to defendants, then living together as man and wife, in 1967.

Should title continue to rest in defendants they will not be unjustly enriched. They will continue to be bound by the mortgage which they, and not plaintiff, gave upon their acquisition of the property in

1962. The presumption of right existing in defendants should be left undisturbed.

The prayer of plaintiff is denied and her complaint is dismissed.