**Hakes v. Hakes**

*Michael DiSisti,* for plaintiff.
*C. Wayne Smyth,* for defendant.

GARDNER, P. J., August 22, 1974.—

## I. STATEMENT OF THE ISSUES

1. Did a confidential relationship exist, in 1961-1962, between the plaintiff, Kenneth L. Hakes, and his then wife, the defendant, Rita Rine Hakes (now Rita Brown), and, if so, was the same violated by the purported taking of sole title by defendant to a 693-acre farm in Shrewsbury Township, Sullivan County, Pa.?

2. Is plaintiff barred by the statute of limitations and/or laches?

## II. STATEMENT OF FACTS

The court finds, on the basis of evidence received at hearings held on October 31, 1972, July 5, 1973, and June 4, 1974, the following facts:

(1) Jasper D. Rine, former husband of defendant and a resident of New York State, died intestate in 1954, seized of a farm of 693 acres in Shrewsbury Township, Sullivan County, Pa., leaving to survive him as his heirs at law, his wife, defendant, and a son and daughter.

(2) Defendant was appointed administratrix of the estate of Jasper D. Rine, deceased, on October 27, 1954, by the Surrogate Court of Tioga County, N. Y.

(3) In July 1956, plaintiff and defendant were married.

(4) In the settlement of the estate of Jasper D. Rine, deceased, defendant purported to purchase the farm by a deed dated August 14, 1961 in which she joined, individually and as administratrix of the said estate, with the daughter of decedent and the daughter's husband, as grantors, the said deed naming defendant, as Rita E. Rine Hakes, as sole grantee. The deed was acknowledged by defendant on August 15, 1961, by the other grantors on January 13, 1962, and recorded in Sullivan County Deed Book, Volume 73 at Page 298 on February 14, 1962.

(5) The said deed disclosed a purchase price of $7,025 paid by a credit of the value of defendant's interest in the Rine estate plus the sum of $957.46 from a bank account held as tenants by the entireties by plaintiff and defendant, which said sum of $957.46 was part of the proceeds of a bank loan subsequently

repaid by defendant from funds under her sole control.

(6) The said deed was returned after its recordation to counsel for the estate who met with plaintiff and defendant in early 1962, at which time the deed was delivered to plaintiff and defendant who examined it.

(7) In 1962, defendant orally leased the said land, after negotiations participated in by plaintiff during which defendant's deed was displayed. Rental payment was by check made solely to defendant.

(8) Other dealings between the parties during their marriage involved use of an entireties checking account for deposit of funds of each, or both, regardless of source, the purchase of at least two properties with title documents in the names of both parties, but such dealings also included a recognition of separate interests in that the safekeeping of certain documents was maintained by each, dependent upon their particular interests in such documents.

(9) Plaintiff, although benefited by less formal education than defendant, was sufficiently literate to be a member of the armed forces, an employe of International Business Machines, a contributor of ideas and designs to his employer which resulted in awards, and a negotiator for timber sales and real estate purchases and sales.

(10) Although plaintiff allowed defendant, during their marriage, to conduct many of the details of their business dealings, such as bank account management, check drawing and bookkeeping, he was sufficiently literate and intelligent to understand the significance of such dealings, including the knowledge of estates in land, muniments of title, and business associations such as partnerships.

(11) Plaintiff had sufficient capability to recognize,

and opportunity to discover, that status of the title of the subject premises in 1962, but remained inactive with reference to such knowledge which he either had or could have easily discovered until this suit was brought in 1971.

(12) Plaintiff and defendant did not have, during their marriage, a relationship characterized by any undue influence, or unfair advantage nor was either a counsellor or advisor to the other to such degree as to involve an overbearing of will.

(13) Plaintiff and defendant made no agreement concerning the manner in which title was to be taken on the August 14, 1961, deed.

## III. DISCUSSION

Plaintiff asserts that, by reason of superior education, "business expertise," and assumption of duties relating to the businesses in which he was involved, his wife, the defendant, was "the dominant person" in their relationship and that, as a consequence, defendant was in a confidential relationship with plaintiff.

Further, plaintiff submits that there was an agreement between the parties that title to the 693-acre farm to be purchased from the estate of Jasper D. Rine, deceased, was to be taken in both their names as tenants by the entireties but that, in violation of said agreement, defendant caused title to be placed in her name alone.

Finally, plaintiff asserts that he did not become aware of the status of the title to the farm until 1969, seven years after the recording of the deed, alleging that, during that period of ignorance, he was induced by defendant to believe that title had been taken in tenancy by the entireties.

Defendant denies any prior agreement as to the manner of taking title, denies a confidential relation-

ship and submits that plaintiff, became aware as early as 1962 of the sole title of defendant, and should be barred by the statute of limitations and/or laches.

Although it would appear a more orderly procedure for the court to first address itself to the question of the applicability of the statute of limitations and/or laches, for reasons hereinafter stated, a discussion of the merits of this proceeding will first occur.

Plaintiff requests the court to construct a trust on the premises which are the subject of this proceeding. Such an oral trust is viewed with disfavor by the law, and plaintiff, as proponent of such a trust, is under a heavy burden to prove the same by evidence which is direct, positive, express and unambiguous: Gray v. Leibert, 357 Pa. 130 (1947).

In this case, plaintiff regards his burden as lightened by vigorously arguing that the evidence shows a confidential relationship between himself and his wife. If such a relationship were held to exist, burden of proof would shift to defendant to show that her conduct in causing title to the subject premises to be placed in her name alone, was justified: Peoples First National Bank and Trust Company v. Ratajski, 399 Pa. 419 (1960).

Such a relationship is not proven by the marriage alone, it being Pennsylvania law that a confidential relationship is recognized only where one person is shown as a matter of fact to be counsellor or advisor for another: Stewart v. Hooks, 372 Pa. 542 (1953).

Special heed, however, apparently must be given to husband-wife cases as a result of Darlington's Appeal, 86 Pa. 512, wherein, at page 518, the following appears:

"A transaction between persons so situated [as husband and wife] is watched with extreme jealousy

and solicitude, and if there be found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party."

Also see Shapiro v. Shapiro, 424 Pa. 120 (1966).

The Darlington and Shapiro cases, supra, must be applied with discretion. In the first place, both cases concern transfers from a husband to a wife of a husband's property, giving rise to the well-known presumption variance then existent in our law between transfers from husband to wife as compared to one from wife to husband, the presumption of gift versus parol trust. Secondly, both Darlington and Shapiro predated the Equal Rights Amendment to the Pennsylvania Constitution, Article I, sec. 27, adopted May 18, 1971, which has caused many re-examinations of familiar and comfortable shibboleths in analyzing the business aspects of the marital relationship.

This court is of the opinion that the most favorable reading of the Darlington and Shapiro rules for plaintiff in the instant case would place the present parties in an equal posture. At best, it appears to this court, that a wife may not now be considered as a perpetual donee. This application of the cited rules is preferable to reducing both parties to the status of dominated marital partners so as to allow plaintiff, in this case, to "rest" his case after proving the marriage alone.

Cases relating to theory of constructive trusts generally involve a situation whereby an aggrieved party has transferred his property to another in whom he has confidence, and, if left unrectified, would be forced into an involuntary gift. In the instant proceeding, such is not the situation.

The subject premises was the property of Jasper Rine, defendant's first husband. Defendant, and decedent's two children were the heirs at law of decedent and, therefore, defendant came into the marriage with

plaintiff already owning a one-third interest. The credible evidence also revealed that defendant was entitled to an additional distributive share of the Rine estate so as to reduce her need for outside funds in order to complete the purchase to the sum of $957.46. Hence, plaintiff is, in essence, asking this court to force defendant to make a gift to him of an interest of nearly all of the 1961 value of the subject premises. This would have to be predicated on the enforcment of an executory contract to make a gift, even if an underlying agreement between plaintiff and defendant as to title is found; such is contrary to Pennsylvania law: Allshouse's Estate, 304 Pa. 481 (1931).

As to the outside funds required to complete the transaction, this court is of the opinion that the same, the sum of $957.46, was repaid by defendant from funds to which plaintiff had no claim of right. Further, the method of raising the money, borrowing the sum as part of a greater amount represented by a security device signed by plaintiff alone, was more of an accommodation by plaintiff to defendant rather than evidence of an agreement by which title to the Rine farm was to be placed in the names of the parties as tenants by the entireties. Finally, it is significant that the proceeds of the bank loan which included the money needed by defendant for the balance of the purchase was placed in an entireties bank account in which defendant was entitled to an individed one-half interest.

What has heretofore been said in this discussion has gone largely to the equities in the transaction which resulted in this litigation. This is appropriate as such is the raw material of which the measure of relief should be shaped: Chambers v. Chambers, 406 Pa. 50 (1962). More basic to the inquiry is whether a confidential relationship existed between this plaintiff and defendant. This court does not so find.

The concept of a confidential relationship cannot be reduced to a catalogue of specific circumstances. The essence of such a relationship is trust and reliance on one side, and corresponding opportunity to abuse that trust for personal gain on the other: Scott Estate, 455 Pa. 429.

Beyond the imposition of confidence, however, there is generally found a great disparity in position because of age or youth, lack of education, ill health or mental weakness.

In this case, plaintiff, although not required to make himself out to be a moron (Peoples First National Bank and Trust Company v. Ratajski, supra), did attempt to picture himself as an illiterate man, completely dependent upon defendant's abilities to do business for him. However, the evidence reveals a typical marriage of divided duties, a sharing of activities of particular interest and capability. Defendant is not the first wife to do the family book work nor plaintiff the first husband to make decisions such as determination of the worth of realty or a product thereof, such as timber. Such is illustrative of the marriage under scrutiny, a process which fails to reveal an atmosphere of the overbearing of will or of marked differentiation in relative ability or influence. Trust and reliance may have existed but not of an overweaning nature; neither marital partner emerges, on balance, as dominant. This court, on the evidence produced here, does not find a breach of duty by defendant, nor fraud, nor any other conduct which took advantage of a climate of inequality, dependence, weakness or want of knowledge except that effected by plaintiff in his testimonial mien.

Nor does this court find that defendant committed herself to a proposition which required her to protect an interest of plaintiff. Plaintiff has a burden, not only

to prove a confidential relationship, but also to establish a promise made by defendant concerning the titling of the realty in question and to establish that defendant broke that promise. The conjoining of the promise and the relationship is the process by which a trust is constructed: Silver v. Silver, 421 Pa. 533 (1966).

The level of proof of a promise or underlying agreement which plaintiff attained is illustrated by the following:

"Q. . . . at the time did you decide whose name you were going to put the deed in?

"A. Well, as man and wife.

"Q. Did you discuss this with your wife?

"A. Yes, she asked me how it should be and I said well everything I've done we've done it as man and wife."

The subject was further testified to by plaintiff as follows:

"Q. And did she then at that time did you have any discussion with her as to how you would take title to this farm?

"A. Well, as husband and wife."

The above excerpts, the heart of plaintiff's case on the important subject of the promise or agreement, which he asserted to have been broken by defendant, does not constitute proof of such a promise or agreement. Not only is it unclear and unconvincing, it fails to establish a definite understanding between the parties as to the manner in which title was to be taken to premises which were to be paid for, largely by defendant's funds and in which she already owned an undivided interest.

Plaintiff also asserted a pattern of deception in defendant's post-conveyance conduct and statements as indicated by the following:

"Q. . . . did your wife indicate to you whether or not she purchased the farm?

"A. Yes.

"Q. What did she tell you at that time?

"A. Well, she came home and said, 'now we are the proud owners of 700 acres.' "

Although testimony such as the above is admissible to corroborate other evidence to establish a trust, it is, of itself, inadequate to such a task: Moffitt v. Moffitt, 340 Pa. 107 (1940).

Defendant's statement, after closing, implying joint ownership of the land is also relevant to plaintiff's effort to avoid conflict with the statute of limitations, which, by the Act of April 22, 1856, P. L. 532, sec. 6, 12 PS §83, is five years and applies to constructive trusts: Truver v. Kennedy, 425 Pa. 294.

The five-year period commences to run at the time the aggrieved party should reasonably have known of the other's "wrongful" act: Truver v. Kennedy, supra.

This court finds credible that, in early 1962, defendant's attorney displayed the deed for the subject premises to both parties, who then examined it. Further, there was testimony, which this court believes, that in 1962 plaintiff again used the deed for the purpose of aiding in a lease negotiation. This court does not believe that the first knowledge that plaintiff had about the state of the title was, as he says, at the institution, in 1969, of the divorce action between the parties.

To this point, it would seem that this opinion is bolstered by plaintiff's being barred by a running of the statute of limitations. However, ordinarily the statute of limitations does not bar relief in a wife-husband situation: Morrish v. Morrish, 262 Pa. 192. Although Morrish was reaffirmed in Shapiro v. Shapiro, supra, the latter case did imply inroads on the prophylaxis of the rule by excepting the situation where proof of

discovery of, or an opportunity, by reasonable diligence, to discover the fraud, is present. Because of this uncertainty, this court does not base its opinion on the statute of limitations. However, it is this court's further opinion that, on the record received here, it should be deemed a bar to the plaintiff's recovery.

This court does not deem laches applicable, there being no evidence that defendant suffered a detriment by inaction of plaintiff, albeit knowing at the time.

In summary, this court finds that plaintiff has failed in his burden. The evidence, even read in the light most favorable to him, is neither clear nor convincing. A contrary conclusion would cause his unjust enrichment and constitute a perversion of the basis for imposition of the equitable concept of a constructive trust.

As a result of the foregoing discussion, this court makes the following

## CONCLUSIONS OF LAW

1. Plaintiff has failed to establish an agreement with defendant pertaining to the manner in which the title to the 693-acre farm, conveyed on August 14, 1961, by the estate of Jasper D. Rine, deceased was to be taken.

2. Plaintiff and defendant were not in a confidential relationship pertaining to the premises which are the subject of this proceeding.

3. Plaintiff is not entitled to equitable relief.

## DECREE NISI

And now, August 22, 1974, based upon the findings of fact and conclusions of law as set forth in the foregoing adjudication in the above-captioned matter, it is decreed that plaintiff is not entitled to equitable relief and, as a consequence, his amended complaint heretofore filed in the above-captioned matter be and the same is hereby dismissed.