In re John E. STEWART and Diana
L. Stewart, Debtors.

Bankruptcy No. 93–82265.

United States Bankruptcy Court,
C.D. Illinois.

Jan. 12, 1996.

William O. Mays, Jr., Mays, Walden & Anastas, Quincy, IL, for Creditor.

Vicki A. Dempsey, D. Terrell Dempsey, Louis W. Riggs, Hannibal, Missouri, for Debtors.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

The Debtors' original motion raises two basic issues. First, whether Twin Mill Investments (CREDITOR) should be compelled to accept the payments made, and being made, by the Debtors through their confirmed Chapter 13 plan towards delinquent 1991 and 1992 real estate taxes on their residential real estate? Second, did the CREDITOR violate § 362 of the Bankruptcy Code, 11 U.S.C. § 362, by its actions in state court to obtain a tax deed without first having the automatic stay lifted? While that motion was pending before this Court, the Debtors, pursuant to state statute, redeemed under protest the 1991 and 1992 taxes and asked this Court to determine the amount due.

In Illinois real estate taxes are assessed on January 1st of each year and are payable the following year. For the year 1991, payable in 1992 (1991 TAXES), the taxes were $786.70. For the year 1992, payable in 1993 (1992 TAXES), the taxes were $816.70. The Debtors failed to pay the taxes for either year. The 1991 TAXES were sold to the CREDITOR on October 26, 1992. In February of 1993 the CREDITOR sent a notice to the Debtors indicating it had purchased the delinquent taxes, that the amount now due was $879.49, and that the redemption date was set for April 20, 1995. On October 4, 1992, the CREDITOR paid the 1992 TAXES based upon the state statute which authorizes a tax buyer to pay subsequent years delinquent taxes.

On October 13, 1993, the Debtors filed their Chapter 13 case. Their schedules list the Hancock County Treasurer (TREASURER), the tax collector, as the creditor. The schedules did not refer to a particular year, and only show a dollar amount ($786.70) as being due for taxes. That figure does coincide with the amount of the 1991 TAXES. Penalties and interest were not scheduled by either appropriate language or by including a dollar amount. The schedules did not list the CREDITOR as a creditor. The combined notice of the first meeting of creditors and confirmation hearing, which included a deadline for the filing of proofs of claim, was sent to the TREASURER, but not to the CREDITOR. The Debtors' amended plan proposed to pay the scheduled taxes through monthly payments to the Chapter 13 Trustee. The amended plan did not propose to pay any penalties or interest. Nor did it make any reference to the delinquent 1992 TAXES. The amended plan was confirmed on February 7, 1994, with only a reference to the 1991 TAXES, without including penalties and interest. On March 15, 1994, the TREASURER filed a proof of claim in the amount of $2,105.61 for both the 1991 and 1992 TAXES along with penalties and interest. Attached to the proof of claim was a computation showing the taxes, penalty and interest for 1991 as being $1,141.91. Opposite that computation was the following notation.

1991 PAYABLE 1992
SOLD AT TAX SALE
10/26/92 BY TWIN
MILLS

Opposite the computation for the 1992 taxes, penalty, and interest in the amount of $963.70 was the following notation.

1992 PAYABLE 1993
SUBSEQUENT BY
TWIN MILLS
PAID 10/4/93

At the bottom of the computation was the following notation.

Amounts will change on April 24, 1994 and again on October 3, 1994

The Debtors did not object to the proof of claim and the Trustee, as he received monthly payments from the Debtors, began making payments to the TREASURER. From the monthly payments made by the Debtors, the Trustee has paid to the TREASURER

$1,502.10 leaving a balance due on the claim in the amount of $603.51.

On July 14, 1994, the TREASURER had the state court enter an order finding that the tax sale was in error. On September 16, 1994, without first having the automatic stay lifted or modified, the CREDITOR had the state court vacate the order on the grounds that because the tax sale occurred before the bankruptcy filing, the TREASURER had no standing to pursue such an action.

In June of 1995, the CREDITOR wrote to the Trustee indicating it was going to file for a tax deed, and the Debtors filed the present motion before this Court to compel the CREDITOR to accept payment on the tax certificate of the funds being held by the TREASURER or in the alternative to be held in contempt for attempting to collect on a debt in violation of the automatic stay. On July 11, 1995, pursuant to the requirements of the state statute, the CREDITOR, without first having the automatic stay lifted or modified, filed a petition in state court to obtain a tax deed for both the 1991 and 1992 TAXES. This filing set forth two dates. First, the Debtors had until October 25, 1995, to redeem under protest the 1991 and 1992 TAXES.[1] Second, if not redeemed the CREDITOR scheduled November 21, 1995, as the date he would appear in state court to request the tax deed. On September 25, 1995, after the hearing in this Court on their motion, the Debtors paid under protest the total amount of principal, interest and penalties due on the 1991 and 1992 TAXES, in the amount of $3,163.87, in order to comply with the requirements of the state statute.

In the memorandum in support of their motion, the Debtors seek an order which, first, directs the TREASURER to redeem the taxes by paying the amount of the filed claim, $2,015.61. In the alternative, directs the TREASURER to redeem the taxes by paying $3,161.88, or whatever is currently due under state law and to hold them harmless for the difference between the claim and the amount due the CREDITOR. Also in the alternative, to direct the TREASURER

to pay $2,105.61, with the Debtors to pay the difference to the CREDITOR.

Before addressing the basic issues in this case, there are several preliminary matters which need to be addressed. First, neither the Chapter 13 plan nor the confirmation order mentions the 1992 TAXES nor the penalties and interest for both years taxes. However, the bulk of those items are clearly pre-petition debts, the proof of claim does include them, and no objection to the proof of claim was filed. Therefore there is no reason why the 1992 TAXES and the penalties and interest on both years taxes should not be subject to the Chapter 13 case.

Another preliminary matter that needs to be addressed is the nature and effect of the notice of the bankruptcy filing which the CREDITOR received. While it is true that the CREDITOR did not get notice of the first meeting of creditors and the confirmation hearing, the CREDITOR became aware of the bankruptcy filing before it took the actions in state court described above. That fact is evident from the CREDITOR's application to the state court, dated August 11, 1994, to vacate the judgment in error and a letter dated June 14, 1995, from the CREDITOR to the Trustee. While the CREDITOR had no opportunity to object to confirmation, it became aware of the bankruptcy filing which carries with it the protection afforded the Debtors by the automatic stay. In discussing the automatic stay provisions found in § 362 of the Bankruptcy Code, 11 U.S.C. § 362, the court in *In re Lile,* 103 B.R. 830 (Bkrtcy.S.D.Tex.1989), stated:

> The automatic stay is effective upon the filing of the bankruptcy petition. It does not require actual notice to be effective. Once notice of the bankruptcy filing is received, a creditor is subject to all of the Code's provisions regarding the automatic stay. Any notice, whether oral or written is sufficient. However, the automatic stay does not permanently prevent a party from retrieving property possessed by the debtor's estate. Section 362(d) provides that

1. Originally the redemption date was April 20, 1995. Apparently it was extended six months to October 25, 1995.

after notice and a hearing, the court shall grant relief from the stay if certain conditions are satisfied. "All parties benefit from the fair and orderly process contemplated by the automatic stay and judicial relief procedure. Judicial toleration of an alternate procedure of self-help and post hoc justification would defeat the purpose of the automatic stay."

Section 362(h) of the Bankruptcy Code was enacted in 1984 to provide the bankruptcy court with the power to impose sanctions for willful violations of the automatic stay pursuant to 11 U.S.C. § 362(a). The subsection states: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The relief provided for a willful violation of the stay under 11 U.S.C. § 362(h) is mandatory. A debtor only needs to prove that he was injured by a "willful" violation of the automatic stay. The term "willful" has been construed to mean deliberate or intentional. A violation of the automatic stay by itself does not automatically warrant an award of monetary damages or the imposition of sanctions. However, when a party acts with knowledge of a pending bankruptcy, a violation of the stay is considered willful. Once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the automatic stay. "Knowledge of the bankruptcy filing has been held to be the legal equivalent of knowledge of the automatic stay." The creditor takes the risk of being assessed for damages if he fails to obtain clarification from the bankruptcy court. (Citations omitted.)

■ The last preliminary matter involves whether the CREDITOR is bound by the confirmed plan. The CREDITOR was not scheduled, received no notice of the confirmation hearing, and had no opportunity to object to confirmation. However, after confirmation, a claim for the taxes was filed, payments were made according to the plan, and the CREDITOR learned about the bankruptcy filing and that the payments were being made.

■ It is fundamental that creditors' rights in bankruptcy are property interests that are protected by the Fifth Amendment and cannot be impaired without notice and an opportunity to be heard. *In re General Development Corp.*, 165 B.R. 685 (S.D.Fla.1994). Thus, a creditor without notice or actual knowledge of a bankruptcy is not bound by the terms of a confirmed plan. *Adam Glass Serv. v. Federated Dept. Stores*, 173 B.R. 840 (E.D.N.Y.1994). As the court stated in *In re Hamilton*, 179 B.R. 749 (Bkrtcy.S.D.Ga. 1995):

> Due process and res judicata work together to protect creditors without notice from being bound to the terms of a plan while binding creditors with notice who elect not to take part in the bankruptcy process.

In the case before this Court, while it is true the CREDITOR learned about the bankruptcy, that knowledge was acquired post-confirmation. There is nothing in the record to indicate the CREDITOR was willing to accept a lesser amount on its claim, and without notice the CREDITOR had no opportunity to object to the treatment it was to receive under the plan.

■ In order to resolve the first basic issue originally raised by the Debtor's motion, two questions must be asked and answered. First, can delinquent real estate taxes be redeemed by installment payments? If not, were, or are, the taxes being redeemed by installment payments? That question is impacted by the Debtors' payment in September of 1995.

Returning to the first question, rephrased, it is whether the Debtors can pay the taxes, penalty and interest through installment payments or must they redeem by one lump sum payment within the time prescribed by the Illinois Statute as extended by § 108(b) of the Bankruptcy Code, 11 U.S.C. § 108(b). This Court addressed that question in *In re Hulslander*, Case No. 95–80850 (unpublished) August 29, 1995, holding that a debtor may not redeem from a tax sale by periodic payments, stating:

As to that issue, the decision of the Seventh Circuit Court of Appeals in *Matter of Tynan*, 773 F.2d 177 (7th Cir.1985) is controlling. In that case the Court of Appeals held that a Chapter 13 debtor could not utilize § 1322 of the Bankruptcy Code, 11 U.S.C. § 1322, to redeem real estate from a mortgage foreclosure sale through periodic payments over the life of the plan, but could only redeem the real estate according to the Illinois Foreclosure Act, as extended by § 108(b). The only difference between *Tynan* and the case before this Court is that in *Tynan* the debtor's proposed plan dealt with redemption from a foreclosure sale, while in this case the proposed plan deals with redemption from a tax sale.

■ As the Debtors cannot redeem by installment payments, the next question needs to be answered. Was this a redemption by installment payments? Section 108(b) of the Bankruptcy Code provides as follows:

(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

Under § 108(b) the Debtors had, as to both the 1991 and 1992 taxes, until the later of, 60 days after the bankruptcy filing, or until December 13, 1993, and the end of the redemption period, or until October 25, 1995, to redeem the taxes. Considering the impact of the bankruptcy filing, if the Debtors paid the total amount due for the 1991 and 1992 TAXES before the October 25, 1995, redemption

date, there is in effect a lump sum redemption.

■ Therefore, this Court must determine the amount paid and the amount due on the 1991 and 1992 TAXES. The Debtors have paid to the Trustee who in turn has paid the TREASURER $1,502.10. As to the issue of the amount due, the Debtors contend that the bankruptcy filing stops the running of the penalties and interest, while the CREDITOR contends they continued to accrue postpetition. As a general rule, penalties are not enforced in bankruptcy. In *In re Klefstad*, 95 B.R. 622 (Bkrtcy.W.D.Wis.1988), the court had before it the status of real estate tax penalties in a Chapter 11 bankruptcy case. The court stated:

In Wisconsin, all real estate taxes levied on a parcel of land become a lien on the parcel of land. Interest is assessed on overdue or delinquent real estate taxes at a rate of one percent per month. It is further provided that counties or cities may by ordinance impose a *penalty* of up to 0.5% per month in addition to the interest on the overdue or delinquent real estate taxes. It is not disputed that, absent the bankruptcy, the real estate tax interest, and penalty assessments would become a lien on the real estate under [Wisconsin law.] "When a bankruptcy [is] filed, however, the priority of liens as set forth by Congress in the Bankruptcy Code governs." "[T]he Bankruptcy Code governs in determining the priority of liens in [a] bankruptcy case." (Citations omitted.)

It is clear that the prepetition real estate taxes, interest, and penalties to the date a Chapter 11 petition is filed all constitute liens against the real estate. 11 U.S.C. § 502(b). It is well established that postpetition interest on prepetition real estate taxes and postpetition real estate taxes and interest act as a lien against the real estate on which they are assessed. (Citations.) Hence, the only issue remaining is how to treat the postpetition penalty on the prepetition real estate taxes and the penalty on the postpetition real estate taxes.

Penalties are not in harmony with the overall philosophy of the Bankruptcy Code

which is to effectuate a fair and equitable distribution of the assets of the estate to creditors. *In re Tastyeast, Inc.*, 126 F.2d 879 (3rd Cir.1942). A penalty is discordant with this philosophy because it serves the function of preferring one creditor at a detriment to other creditors of the estate. "A bankruptcy court is essentially a court of equity and will therefore not enforce a penalty." The Court notes that oversecured creditors are generally allowed interest on their claims but they are not allowed penalties. 11 U.S.C. § 506(b). However, the Code does allow for an administrative expense priority for any penalty relating to "... any tax incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title;" 11 U.S.C. § 503(b)(1)(B). (Citations.) Accordingly, the Court does allow the postpetition penalty on postpetition tax as an administrative expense.

    ....

There is a presumption that penalties assessed on tax deficiencies are punitive and the taxing entity must show otherwise in order to rebut this presumption. When a taxing entity assesses both penalties and interest it is unlikely that a compensatory role is provided by both the penalty and the interest. In the case at hand it appears that the imposition of a penalty of 6% on top of interest of 12% is punitive. In any event, the taxing entities have not provided sufficient argument to rebut the presumption that the penalties are in fact punitive.

In conclusion, generally there is no personal liability for real estate taxes in Wisconsin. Instead, real estate taxes act as a lien upon the property against which they are assessed, superior to all other liens. Under state law the interest and penalties associated with the real estate tax would also become a lien on the property. After a bankruptcy petition is filed, the Bankruptcy Code provides a different system of priority. The real estate taxes and interest represent a benefit to the property and the estate, and the Bankruptcy Code allows for the perfection of the counties' preexisting interests in the real estate to this extent while treating penalties on qualified taxes as an administrative expense. However, the postpetition penalty on the prepetition tax is punitive in nature. The Bankruptcy Code does not allow for the imposition of this penalty because it would deprive other creditors of their fair share.

*In re Klefstad* was followed by the court in *In re Schneider*, 162 B.R. 199 (Bkrtcy. E.D.Wis.1993), in a Chapter 13 case.

■ The CREDITOR is entitled to be paid pre-petition taxes, penalties and interest along with post-petition interest, but no postpetition penalties. Neither the Debtors nor the CREDITOR presented any evidence which would permit this Court to determine the exact amount of taxes, penalties and interest due as of the date of the bankruptcy filing and the amount of post-petition interest that has accrued. However, it is safe to assume that the amount due is at least the amount initially claimed by the TREASURER, $2,105.61.[2] As the amount paid to the TREASURER, through the plan, is less than the amount due, there has not been a lump sum redemption through the plan.

■ However, this Court must consider the impact of the Debtors redeeming the 1991 and 1992 TAXES under protest. Prior to the October 25, 1995 redemption date, the Debtors, pursuant to 35 ILCS 200/21–380, with money given to them by relatives, redeemed under protest the 1991 and 1992 TAXES. While this Court is not sure that the procedure provided for by § 200/21–380 was intended to cover a situation such as is before this Court, the payment does amount to a redemption prior to the redemption date, and all that remains to be determined is the amount necessary to redeem the 1991 and 1992 TAXES, considering the effect of the bankruptcy filing. As indicated above, that figure, which this Court cannot calculate, should be the 1991 and 1992 taxes, pre-

---

**2.** Under the state statute, penalties and interest are added every six months, on April 24th and October 3rd. The bankruptcy was filed on October 13th, right after a change on October 3rd. The next change would not have been until April 24th. So when the proof of claim was filed on March 15th for $2,105.61 it would have been for pre-petition taxes, penalty and interest.

petition penalties and interest, and post-petition interest.

■ The other basic issue before this Court involves whether the CREDITOR's actions violated the automatic stay found in § 362 of the Bankruptcy Code, 11 U.S.C. § 362. Section 362 provides in part as follows:

(a) ... [A] petition filed under section 301 ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

. . . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

. . . .

(c) Except as provided in subsections (d), (e), and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;

. . . .

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

This Court has yet to decide the issue of whether a tax buyer has to first seek relief from the automatic stay prior to petitioning the state court for a tax deed. In *In re Hulslander,* Case No. 95–80850 (unpublished) August 29, 1995, the creditor objected to confirmation of the plan and asked to have the automatic stay lifted prior to applying for a tax deed. This Court held that the debtors could not redeem delinquent taxes through installments, denied confirmation of the plan, and lifted the automatic stay to permit the creditor to proceed with state procedure to collect the delinquent taxes.[3]

■ Sections 362(a)(3) and (4) would not afford the Debtors any protection as both protect "property of the estate" and once the plan was confirmed the residence was no longer property of the estate. Section 362(c)(1) continues the automatic stay against property of the estate until such property is no longer property of the estate. Under § 1327(b) of the Bankruptcy Code, 11 U.S.C. § 1327(b), unless the plan or the order confirming the plan provides otherwise, confirmation of the plan vests all of the property of the estate in the debtor. The Debtors' plan provided that "[p]roperty of the estate will best [sic] in the debtors' at the time of confirmation of the Plan, unless otherwise stated in the order confirming the plan." The order confirming the plan did not contain any provisions to the contrary. Hence, with confirmation, the real estate was no longer property of the estate and had vested in the Debtors.

Section 362(a)(5), however, would afford the Debtors protection. It protects the Debtors' property from the enforcement of any lien securing a claim that arose prepetition. The residential real estate is Debtors' property. The tax claim arose pre-petition. The question is whether the CREDI-

3. See also In re Milne, 185 B.R. 277 (Bkrtcy. N.D.Ill.1995) affirmed on appeal, 185 B.R. 280 (D.C.N.D.Ill.1995) where the bankruptcy court and the district court both held the automatic stay should be lifted where the creditor applies for such relief before seeking the tax deed.

TOR holds a lien, or something more. In *In re Jackson,* 173 B.R. 637 (Bkrtcy.N.D.Ill. 1994) the bankruptcy court held that the obtaining of a tax deed perfects or enforces a lien and seeking a tax deed without first having the automatic stay lifted, violated § 362. On appeal the District Court in the Northern District of Illinois reversed, finding a tax buyer acquired something more than a lien, and holding that it was not a violation of § 362 to seek a tax deed without first having the automatic stay removed. *Jackson v. Midwest Partnership,* 176 B.R. 156 (N.D.Ill. 1994). In *In re Winters,* (N.D.1995) 1995 WL 453053, another district court in the Northern District of Illinois found the tax buyer held a lien and violated § 362 in obtaining a tax deed without first having the automatic stay removed.

This Court agrees with the District Court in *Winters. Black's Law Dictionary* defines lien as follows:

A claim, encumbrance, or charge on property for payment of some debt, obligation or duty.... Qualified right of property which a creditor has in or over specific property of his debtor, as security for the debt or charge or for performance of some act. Right or claim against some interest in property created by law as an incident of contract. Right to enforce charge upon property of another for payment or satisfaction of debt or claim.... Tie that binds property to a debt or claim for its satisfaction. (Citations omitted.)

Section 101(37) of the Bankruptcy Code, 11 U.S.C. § 101(37) broadly defines "lien" to mean:

"lien" means charge against or interest in property to secure payment of a debt or performance of an obligation.

11 U.S.C. § 101(37). As the court in *Winters* concluded:

Rather, the tax certificate gives the tax purchaser the right to be paid the price of the sale if there is a redemption by the owner. *Chicago v. City Realty Exchange, Inc.,* 127 Ill.App.2d 185, 262 N.E.2d 230, 233 (1970). This right is a charge upon the property for payment of the debt represented by the taxes and, thus, constitutes a

lien on the property in favor of the tax purchaser.

The Debtors are also protected by § 362(a)(1) and (6). The statutory collection of taxes was a proceeding against the Debtors that was commenced prior to the filing of the bankruptcy and the CREDITOR's continuation of that proceeding without having the automatic stay lifted, violated § 362(a)(1). Under § 362(a)(6) the CREDITOR's actions to obtain a tax deed also constituted acts to collect a claim against the Debtors that arose pre-petition. While a state court tax proceeding may generally be classified as an *in rem* proceeding under state law, for bankruptcy purposes it is a proceeding against the debtor.

The 1991 TAXES were sold on October 26, 1992. The plan was confirmed on February 7, 1994. Although the CREDITOR was not listed as a creditor and it did not receive a notice from the Court, it subsequently learned of the bankruptcy. Yet on two occasions it proceeded without first having the automatic stay removed. First in September of 1994, thirteen months before the redemption period ran, it had the state court vacate its order finding the tax sale in error. Second, in July of 1995, it petitioned the state court for the tax deed.

The last question that needs to be answered is what are the sanctions for violating the automatic stay. Section 362(h) provides that an individual injured by a willful violation of a stay can recover actual damages, including costs and attorney fees, and where appropriate, punitive damages. The Debtors will be injured if the CREDITOR continues as they will lose their residence. The CREDITOR's actions were clearly willful as it knew of the bankruptcy and acted with disregard for it. In *Jackson, supra,* the bankruptcy court stated the tax buyer's attempts to obtain a tax deed in violation of the automatic stay were *void ab initio.* This Court agrees. However, if the CREDITOR would accept the amount of the 1991 and 1992 TAXES along with pre-petition penalties and interest, and post-petition interest, the sanctions could be avoided.

In summary, the CREDITOR is not bound by the plan, the Debtors may not redeem by installments, but have redeemed in full prior to the redemption date, the CREDITOR violated § 362, and the sanctions for the violation is the CREDITOR's actions to obtain the tax deed are *void ab initio,* but that such sanctions can be avoided by the CREDITOR accepting an amount equal to the 1991 and 1992 TAXES plus prepetition penalties and interest and post-petition interest as redemption in full for the 1991 and 1992 TAXES.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in the Opinion entered this day, IT IS HEREBY ORDERED that:

1. The Motion to Compel filed by the DEBTORS is hereby ALLOWED;

2. The parties shall compute the amount of the 1991 and 1992 taxes, prepetition penalties, and interest, that the CREDITOR is entitled to receive, as set forth in the Opinion. The CREDITOR shall have fourteen (14) days from the date of this Order to file with this Court, and in the state court tax proceeding, a notice of acceptance of those payments and intent to surrender the certificate of purchase to the County Treasurer.

3. If the CREDITOR files an acceptance as set forth above, the County Treasurer is directed to accept the surrender of the certificate of purchase, to pay over to the CREDITOR the sum the parties have agreed on, and to refund any balance to the DEBTORS.

4. If the CREDITOR fails to file an acceptance as set forth above, sanctions shall be imposed against the CREDITOR in the manner provided in the Opinion, by further Order of this Court.