**In re Earsline GIDDENS, Debtor.**

**No. 02 B 41591.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 10, 2003.

Timothy Yueill, Chicago, IL, for Movant Citicorp.

Samuel Neschis, New York City, for Respondent.

Tom Vaughn, Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER

JACQUELINE P. COX, Bankruptcy Judge.

The movant herein, Citicorp Trust Bank, formerly known as Citifinancial Services

Inc. and Associates Finance Inc. ("Citicorp"), has motioned for an annulment of the automatic stay in the case of chapter 13 debtor Earsline Giddens ("Giddens") pursuant to 11 U.S.C. § 362(d) for "cause." The adjudication of the motion is a "core" proceeding over which this court has original jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b).

Before Giddens filed the present chapter 13 petition on October 23, 2002, the following series of events transpired.

### Findings of Fact

On August 18, 1977, Giddens (then Turner) entered into an "Installment Agreement for Warranty Deed" with Joseph and Helen DiVito (the "DiVitos") under which Giddens would receive real property located at 6201–03 South Hermitage Avenue, Chicago, Illinois 60636 (the "Property"), in exchange for $35,500, the final installment of which was due on August 1, 1981. Giddens was entitled to delivery of the deed upon full payment of the purchase price but was also obligated to pay property taxes and insurance premiums until she received legal title to the Property. Giddens personally rehabilitated the four-unit building located on the Property over the next two decades for approximately 80 to 90 thousand dollars, residing in one unit and leasing out the other three. She nonetheless failed to record the deed or the contract for that entire time, and the property tax bills continued to be sent to and paid by the DiVitos, who were reimbursed by Giddens according to their agreement.

The DiVitos and Giddens failed to pay the property taxes for 1995, which Prime-Co Inc. purchased at Cook County's annual tax sale[1] on February 19, 1997, and subsequently sold to S.I. Boo L.L.C. ("S.I. Boo"), also known as S.I. Securities, on

---

1. *See* 35 Ill. Comp. Stat. Ann. 200/21–190 (West 1996).

May 29, 1998. S.I. Boo eventually filed its petition for a tax deed in the Circuit Court of Cook County Tax Division on September 1, 1999, and a *lis pendens* notice regarding the same was recorded two days later. The time period for redemption of S.I. Boo's certificate of purchase was set to expire (by extension) on January 26, 2000.[2] During the three-to-five month window of time before this redemption-expiration date, S.I. Boo made a variety of attempts to notify "owners, occupants and parties interested in the property" of such date as required by Illinois law.[3] Giddens, who was not listed in the recorded title chain, was nonetheless personally served notice as an occupant and as a potential interest holder who had been served in a municipal case involving a water or sewer lien on the Property.

By the time that the redemption date rolled around, Giddens had already filed her first of six chapter 13 bankruptcy petitions, and so the automatic stay[4] for case number 99B37860 had been in effect since December 8, 1999. During the last week of November before she filed this chapter 13 petition and immediately thereafter, Giddens visited the office of S.I. Boo to explain her interest in the Property and to attempt delivery of around $5000 of the $11,550 redemption amount to S.I. Boo's agent John Bridges, but Bridges would recognize neither the offer nor the chapter 13 order for relief. December 8, 1999 was also the first date on which Giddens' name actually appeared on the Chicago Title Insurance Company's grantee tract index search for the Property, because she recorded her chapter 13 bankruptcy petition listing the Property on its schedules with the county register of deeds.

After the redemption period expired, S.I. Boo filed its February 26, 2000, application for a tax deed from the Circuit Court of Cook County Tax Division,[5] which culminated in the Cook County Clerk issuing it a tax deed on March 27, 2000, and S.I. Boo recording the same on April 21, 2000. Giddens' first chapter 13 bankruptcy case (with its automatic stay), however, was not yet dismissed until April 24, 2000—three days after S.I. Boo recorded the tax deed—for failure to make plan payments.

On May 15, 2000, Giddens filed her second chapter 13 case. In that case, her bankruptcy attorney filed a motion dated June 21, 2000, alleging that under § 362(h) of the Bankruptcy Code, S.I. Boo was liable for damages as a willful violator of the automatic stay in her previous case and that the tax deed issued was null and void. The attorney, nevertheless, withdrew this motion after S.I. Boo threatened him with a Bankruptcy Rule 9011 motion for sanctions, which claimed that the § 362(h) motion was meritless because Giddens was not the record owner. Eventually, Giddens' second case was dismissed on November 27, 2000.

During June 2000, before her second case was dismissed, S.I. Boo transferred its tax deed to a land trust for the benefit of Maurice Cody. Cody used his interest in the Property to secure a $104,187.31 debt to Citicorp, the movant herein, and also informed Giddens' tenants that they no longer needed to pay her rent for use of the Property. When Cody became delinquent on the loan, Citicorp filed a foreclosure action in the Circuit Court of Cook

---

**2.** *See* 35 Ill. Comp. Stat. Ann. 200/21–350, 21–385 (West 1996 & Supp.2001).

**3.** *See* 35 Ill. Comp. Stat. Ann. 200/22–10 (West 1996 & Supp.2001).

**4.** *See* 11 U.S.C. § 362(a).

**5.** Case No. 99 CoTD 3178

County Chancery Division during August 2001. Citicorp itself purchased the property for a bid of $94,900 at the subsequent judicial sale, leaving it with a deficiency of $26,848.44. On February 28, 2002, the state court confirmed Citicorp's judicial-sale deed,[6] which Citicorp recorded on May 13, 2002, and issued an order of possession in Citicorp's favor.

In the meantime, Giddens had at long last recorded her "Installment Agreement for Warranty Deed" to the Property on January 31, 2002, shortly before Citicorp received its judicial deed from the foreclosure action. Finally, on October 23, 2002, she also recorded her sixth and current bankruptcy case, after having filed several more failed chapter 13 cases. She continues to hold one of the four apartments units on the Property but no longer resides in it. Giddens' last two cases have frustrated Citicorp's attempts to fully exercise its order-of-possession rights over the unit.

### Conclusions of Law

■■■■ To begin the analysis, a discussion of the nature of Giddens' interest in the Property and her redemption rights under Illinois property tax law is necessary. Ever since Giddens' first chapter 13, great confusion has resulted from imprecise legal conclusions and references. The argument has been made all along that she was not the "owner" of the Property because she did not have record title to it, and this argument apparently led to the present motion, the withdrawal of Giddens' attorney's June 2000 motion to rectify a willful stay violation, and S.I. Boo's refusal to deal with her redemption attempts. Unfortunately, such fundamentally flawed contentions have failed to sort out the differences between owners of record, legal title holders, and equitable interest holders and how they impact the Illinois Property Tax Code and the U.S. Bankruptcy Code. The following Illinois Supreme Court passage illustrates the basics needed to understand real property law:

> A warranty deed conveys a fee simple estate to the grantee. *Urbaitis v. Commonwealth Edison*, 143 Ill.2d 458, 468, 159 Ill.Dec. 50, 575 N.E.2d 548 (1991); 765 ILCS 5/9 (West 1996). The grantee's failure to record the deed does not affect the deed's operation as a conveyance. *Lucas v. Westray*, 408 Ill. 243, 248, 96 N.E.2d 623 (1951). The deed is effective upon delivery. *Lucas*, 408 Ill. at 248, 96 N.E.2d 623. It is axiomatic that the grantor of a valid warranty deed cannot defeat the grantee's title to the property based on the grantee's failure to record. *Gibson v. Brown*, 214 Ill. 330, 337–38, 73 N.E. 578 (1905) (grantee's failure to record deed does not divest grantee of title). The grantee's failure to record the deed may affect the grantee's rights vis-a-vis a third party who purchases the property without notice of the grantee's unrecorded interest (see 765 ILCS 5/30 (West 1996)), but the grantee's failure to record does not resuscitate the grantor's interest in the property.

*In re Cook County Treasurer*, 185 Ill.2d 428, 235 Ill.Dec. 910, 706 N.E.2d 465, 468 (1998).

■■■■ Having received the deed to the Property after fulfilling her duties under the "Installment Agreement for Warranty Deed" in the early 1980s, Giddens became the holder of both the legal and equitable title. Furthermore, Giddens had a property interest that became part of her bankruptcy estate under 11 U.S.C. § 541(a), in spite of the fact that she did not record her legal interest in the property until two

---

6. Case No. 01 CH 12941

years after the pendency of case number 99 B 37860.

■ Her failure to record the deed additionally had no effect on her right to receive notice or to redeem the property taxes from S.I. Boo before the redemption period expired. Illinois law provides in relevant part as follows:

A purchaser or assignee shall not be entitled to a tax deed to the property sold unless, not less than 3 months nor more than 5 months prior to the expiration of the period of redemption, he or she gives notice of the sale and the date of expiration of the period of redemption to the *owners, occupants, and parties interested in the property,* including any mortgagee of record. . . .

35 Ill. Comp. Stat. Ann. 200/22–10 (West 1996 & Supp.2001) (emphasis added). Having provided Giddens this required notice, S.I. Boo then refused to honor her redemption attempts during and around December 1999, in spite of the following provision in the Illinois Property Tax Code:

A right to redeem property from any sale under this Code shall exist in any *owner or person interested in that property,* other than an undisclosed beneficiary of an Illinois land trust, whether or not the interest in the property sold is recorded or filed. Any redemption shall be presumed to have been made by or on behalf of the owners and persons interested in the property and shall inure to the benefit of the persons having the legal or equitable title to the property redeemed, subject to the right of the person making the redemption to be reimbursed by the persons benefited. No redemption shall be held invalid by

reason of the failure of the person redeeming to have recorded or filed the document evidencing an interest in the property prior to redemption, other than an undisclosed beneficiary of an Illinois land trust.

35 Ill. Comp. Stat. Ann. 200/21–345(a) (West 1996 & Supp.2001) (emphasis added).

As a result of the Illinois Supreme Court's interpretation of the above two provisions, Giddens not only had a right to redeem the property taxes from S.I. Boo when she filed her first chapter 13, but she also may have been the *only* person or entity with such a right at that time. This is so because a last official owner of record who (after delivering the deed to one who does not record it) retains no further legal or equitable interest in real property does not have a right to redeem taxes from a tax sale purchaser, because such person is not an "owner." *See In re Application of the Cook County Treasurer,* 185 Ill.2d 428, 235 Ill.Dec. 910, 706 N.E.2d 465, 466, 469 (1998). Inversely, a holder of the legal and equitable interest in real property who fails to record the deed does have a right to redeem the purchased taxes, *see id.,* 706 N.E.2d at 468–70, and he or she may, in such a situation, be the only person with such a right, because the group of those entitled to redeem property taxes is narrower[7] than those entitled to notice of the sale and the redemption-expiration date, *see id.* at 468–69. In fact, a mere contract purchaser without any deed at all does have an equitable interest entitling him to redeem real property. *See Franzen v. Donichy,* 9 Ill.2d 382, 137 N.E.2d 825, 827 (1956).

7. While occupants are entitle to notice of the expiration of the redemption period under section 200/22–10 of the Illinois Property Tax Code, they are excluded from the list of those entitled to redeem property under section 200/21–345(a). *See In re Application of the Cook County Treasurer,* 185 Ill.2d 428, 235 Ill.Dec. 910, 706 N.E.2d 465, 466, 469 (1998).

Giddens, then clearly had a redeemable interest at the time she filed for bankruptcy relief in December 1999, because the last official owners of record, the DiVitos, had long since passed the legal and equitable title to the Property to her.[8] That is, they had already deeded the property upon Giddens' completion of the installment land contract during the early 1980s. Furthermore, at the time of PrimeCo's tax sale purchase in February 1997, Giddens was apparently the only person with a right of redemption against S.I. Boo within the meaning of section 200/21–345(a) of the Illinois Property Tax Code and *In re Cook County Treasurer,* with the possible exception of the City of Chicago, which may have still held an unreleased water and sewer lien from 1990. PrimeCo's (and S.I. Boo's) certificate of purchase did not affect the legal or equitable title to the Property, as it merely created a lien for the amount of taxes paid at the tax sale plus penalties and interest. *See In re Winters,* 1995 WL 453053, at *4–*5 (N.D.Ill.1995); *In re Halas,* 194 B.R. 605, 613–14 (Bankr.N.D.Ill. 1996); *In re County Treasurer and Ex–Officio Collector of Cook County,* 323 Ill. App.3d 1044, 257 Ill.Dec. 168, 753 N.E.2d 363, 366 (2001). Thus, Giddens' interest in the Property became part of the bankruptcy estate in her first chapter 13 case, even though the delinquent property taxes had been sold. *See In re Halas,* 194 B.R. 605, 612 (Bankr.N.D.Ill.1996).

During Giddens' first case, the applicable provisions of 11 U.S.C. § 362(a) protecting this interest were the ones staying

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate; [and]
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title....

*In re Bates,* 270 B.R. 455, 467 (Bankr. N.D.Ill.2001) (citing 11 U.S.C. § 362(a)); *see also In re Stewart,* 190 B.R. 846, 853–54 (Bankr.C.D.Ill.1996).

█ Citicorp contends that pursuant to the exception listed in § 362(b)(3),[9] S.I. Boo's underlying application for a tax deed was not subject to the automatic stay, and the tax deed issued in March 2000 was,

---

**8.** In some situations, the passage of equitable title may be delayed by the explicit terms of the contract until delivery of the deed or full payment of the purchase price. *See Douglas v. Thompson,* 339 Ill.App. 149, 88 N.E.2d 744, 744 (1949). Such a provision was contained in paragraph 7 of the 1977 "Installment Agreement for Warranty Deed," which clearly postponed the vesting of the equitable interest in Giddens until the DiVitos delivered the deed and received full and timely payment of the purchase price.

**9.** "(b) The filing of a petition under section 301, 302, or 303 of this ... does not operate as a stay—(3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title...." 11 U.S.C. § 362(b).

"(b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that—(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation." 11 U.S.C. § 546(b).

furthermore, not a violation of the automatic stay. The contention fails to describe with any precision how the general rule and its exceptions interact with the Illinois tax sale procedure. Case law has recognized that while the final hearing and application for the issuance of a tax deed are indeed stayed under § 362(a) as an act to enforce a lien, the acts required of the tax-sale purchaser in order to preserve its *in rem* claim against the delinquent real property are excepted from the stay by § 362(b)(3). *See In re Bates,* 270 B.R. 455, 461, 468–70 (Bankr.N.D.Ill.2001). These excepted acts under Illinois tax-sale procedure include filing the tax-deed petition and sending the notices of the redemption-period expiration date and the date on which the holder of the certificate of purchase plans to apply for the issuance order—all acts that must be performed within the three-to-five-month window before the redemption-period expiration date. 35 Ill. Comp. Stat. Ann. 200/22–10, –20, –30 (West 1996 & Supp.2001).

▮ Here, the excepted acts that S.I. Boo needed to perform in order to retain its property interest securing the redemption amount[10] occurred before Giddens filed her chapter 13 petition during December 1999, but the automatically stayed filing of the application for an order issuing the tax deed occurred on February 26, 2000, the hearing on such application took place on March 2, 2000, and then issuance of the tax deed followed on March 27, 2000. These acts were clearly not excepted from the automatic stay, because they went beyond mere preservation of S.I. Boo's *in rem* interest in the property; they were acts enforcing a lien against and controlling property of the estate while Giddens' first chapter 13 was pending. *See In re Winters,* 1995 WL 453053, at *6 (N.D.Ill.1995); *In re Bates,* 270 B.R. 455,

461, 467–68, 470 (Bankr.N.D.Ill.2001). Therefore, they were all null and void *ab initio.* *See Kalb v. Feuerstein,* 308 U.S. 433, 438, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (interpreting analogous provision of 1898 Bankruptcy Act); *In re Siciliano,* 13 F.3d 748, 750–51 (3d Cir.1994); *In re Schwartz,* 954 F.2d 569, 570–72 (9th Cir.1992); *In re Calder,* 907 F.2d 953, 956 (10th Cir.1990); *Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371, 372–73 (10th Cir.1990); *In re 48th Street Steakhouse,* 835 F.2d 427, 431 (2d Cir.1987); *In re Albany Partners,* 749 F.2d 670, 675 (11th Cir.1984); *Matthews v. Rosene,* 739 F.2d 249, 251 (7th Cir.1984); *In re Smith Corset Shops,* 696 F.2d 971, 976 (1st Cir.1982); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir.1982); *In re Advent Corp.,* 24 B.R. 612, 614 (1st Cir. BAP 1982); *Matter of Brown,* 210 B.R. 878, 880 (Bankr. S.D.Ga.1997); *In re Stewart,* 190 B.R. 846, 854 (Bankr.C.D.Ill.1996); *In re Pettibone Corp.,* 110 B.R. 848, 853 (Bankr.N.D.Ill. 1990), *aff'd sub nom. Pettibone Corp. v. Baker,* 119 B.R. 603 (N.D.Ill.), *vacated on other grounds sub nom. Pettibone Corp. v. Easley,* 935 F.2d 120 (7th Cir.1991); *Richard v. Chicago,* 80 B.R. 451, 453 (N.D.Ill.1987); *In re Coleman Am. Cos.,* 26 B.R. 825, 831 (Bankr.D.Kan.1983); *In re Miller,* 10 B.R. 778, 780 (Bankr.D.Md. 1981), *aff'd,* 22 B.R. 479 (D.Md.1982).

### A. Citicorp's Motion to Annul the Automatic Stay

▮ Thus, we arrive at the necessity of Citicorp's § 362(d) motion to "annul" the automatic stay, which differs from a modification or termination of the stay in that it asks a court to retroactively declare that the stay never existed from the inception of a bankruptcy case with respect to a particular entity. "Courts are in agree-

---

**10.** *See* 35 Ill. Comp. Stat. Ann. 200/21–355 (West 1996 & Supp.2001).

ment that allowing retroactive relief from the stay is the exception rather than the rule." *In re Scott*, 260 B.R. 375, 381 (Bankr.D.S.C.2001); *see Soares v. Brockton Credit Union*, 107 F.3d 969, 977 (1st Cir.1997); *First American Title Ins., Co. v. Lett (In re Lett)*, 238 B.R. 167 (Bankr. W.D.Mo.1999). The Court may weigh equitable considerations in deciding whether to annul the automatic stay, including whether the creditor who violated the stay did so willfully and whether the movant would be unfairly prejudiced by the enforcement of the stay. *See In re Scott*, 260 B.R. 375, 382 (Bankr.D.S.C.2001); *In re Bates*, 270 B.R. 455, 470 (Bankr.N.D.Ill. 2001); *In re Halas*, 194 B.R. 605, 614 (Bankr.N.D.Ill.1996).

■■■■■ Citicorp unfortunately does not specify whether it is requesting the annulment of the automatic stay in Giddens' current chapter 13 or the one she filed in December 1999. The Court will assume it is requesting the annulment of the stay in her first chapter 13 (No. 99 B 37860), because the events that unfolded in the earlier case are at the heart of the legal controversy over the validity of the tax deed issued to S.I. Boo and ultimately leading to a foreclosure sale initiated by the movant Citicorp. Moreover, Citicorp has apparently not committed a violation of the automatic stay in Giddens' current chapter 13, and it has no need to have the presently pending stay annulled just to attempt to evict Giddens, as a simple motion to modify or terminate the automatic stay would be sufficient. The fact that her first chapter 13 is no longer an open case is also no barrier to the consideration. Because the reopening of a case is not a jurisdictional requirement, *see In re Statistical Tabulating Corp.*, 60 F.3d 1286, 1290 (7th Cir.1995), a bankruptcy court with jurisdiction over the case before it may adjudicate presently relevant issues, even if they directly involve a debtor's closed case, as long as the debtor's asserted rights and remedies were created by the U.S. Bankruptcy Code. *See Aiello v. Providian Financial Corp.*, 231 B.R. 693, 707–07 (Bankr.N.D.Ill.1999).

■■■■■ Annulment of the stay in Giddens' 1999 chapter 13 case, however, makes relevant the willfulness of S.I. Boo's aforementioned stay violations, even if it is not the movant herein or even a creditor involved with the pending case. A willful violation of the stay occurs within the meaning of § 362(h) [11] when (1) the conduct leading to the violation is deliberate and (2) the violator had knowledge of the debtor's pending bankruptcy case (which is equivalent to knowledge of the stay). *See In re Winters*, 1995 WL 453053, at *6–*7 (N.D.Ill.1995); *Matter of Brown*, 210 B.R. 878, 880 (Bankr.S.D.Ga.1997). Oral or written notice of a bankruptcy filing is legally sufficient to convey knowledge of the automatic stay. *See In re Stewart*, 190 B.R. 846, 849–50 (Bankr.C.D.Ill.1996). A stay violation is still a willful one if the actor misconstrues the scope of the automatic stay or its listed exceptions, because a specific intent to violate the stay is not necessary. *See In re Winters*, 1995 WL 453053, at *6–*7.

■■■ In this case, the March 2, 2000, transcript of the proceeding before Judge Alfred J. Paul shows that S.I. Boo's conduct causing the subsequent issuance of the tax deed was deliberate conduct. Two other pieces of evidence also collectively lead to the factual conclusion that S.I. Boo's violations of the stay were per-

---

**11.** "(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

formed with knowledge of Giddens' case. First, the unrebutted testimony of Giddens establishes that shortly after she filed her first chapter 13 case listing the Property as part of the bankruptcy estate, she personally visited the office of S.I. Boo and spoke to its agent/employee John Bridges about the order for relief. Second, the Chicago Title Insurance Company search for the Property reveals that Giddens recorded her bankruptcy petition on the same day that she filed it with the bankruptcy court clerk, putting the world on notice that the Property was being claimed by someone who was not, at that time, the owner of record. For the reasons developed above, S.I. Boo was not legally justified in rejecting Giddens' claim to the Property and redemption attempt simply because she was not the last owner of record. Rather, S.I. Boo had "inquiry notice" that Giddens held a deed to the Property and actual notice of her chapter 13 case. In conclusion, S.I. Boo's acts to obtain the tax deed during February and March 2000 were willful violations of the automatic stay.

While S.I. Boo's willful violation of § 362(a) strongly weighs against annulling the stay in favor of a later claimant to the Property like Citicorp, other factors could make the balancing of equities more complicated. For instance, in spite of a willful stay violation by the tax-sale purchaser, equity may still favor annulment if a null and void tax deed would still not entitle the prior owner/debtor to relief, leaving both parties in an awkward state of limbo where neither one would immediately have a clear legal title. Such might be the situation where the prior owner/debtor could no longer redeem the taxes after the redemption period has expired, but the tax deed issued by the state court was still null and void. The federal courts in Illinois are divided on the length of time during which a prior owner/debtor may redeem property taxes during a chapter 13 case. Some conclude that § 108(b) [12] of the Bankruptcy Code requires a chapter 13 debtor to pay in full the redemption amount before the later of the regular expiration date and 60 days after the petition date, while another concludes that § 1322(b) [13] supersedes that provision by permitting the debtor to pay a secured creditor's claim over the course of a three-to-five-year plan extending beyond the date provided in § 108(b). *Cf. Smith v. Phoenix Bond & Indem.*, 288 B.R. 793, 796–97 (N.D.Ill.2002) (state-law right of redemption must be exercised within time limits of § 108(b)); *In re Stewart*, 190 B.R. 846, 850–51 (Bankr.C.D.Ill. 1996) (same); *In re Murray*, 276 B.R. 869, 875–77 (Bankr.N.D.Ill.2002) (same) *with In re Bates*, 270 B.R. 455, 466–67 (Bankr. N.D.Ill.2001). The present case does not require the Court to choose between these

**12.** "(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, *as the case may be, before the* later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 60 days after the order for relief." 11 U.S.C. § 108(b) (2003).

**13.** "(b) Subject to subsections (a) and (c) of this section, the plan may—(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; (3) provide for the curing or waiving of any default...." 11 U.S.C. § 1322(b) (2003).

two viewpoints, because even opinions such as *Bates* giving greater weight to § 1322(b) hold that when the redemption period expires during a *prior* chapter 13 case, the same debtor in a *subsequent* chapter 13 case can no longer redeem the property taxes by means of the plan, because a "claim" for property taxes no longer exists within the meaning of § 1322(b). *See In re Bates,* 270 B.R. 455, 458, 469–71 (Bankr.N.D.Ill.2001). Here, Giddens' redemption period was set to expire on January 26, 2000,[14] her chapter 13 petition extended this date to February 7, 2000, S.I. Boo recorded the tax deed issued in March by the Cook County clerk on April 21, 2000, and her first case was dismissed on April 24, 2000. Whether or not she could have legally redeemed the 1997 certificate of purchase throughout a confirmed plan in that case, Giddens cannot redeem it in the present chapter 13 case filed on October 23, 2002. Yet, the tax deed issued in March 2000 would not entitle S.I. Boo or its assignee to the Property either, because it is null and void, and S.I. Boo would be required to repeat the whole process, if it could legally do so.

Theoretically, then, annulling the automatic stay could be more efficient than declaring the originally issued tax deed null and void and then modifying the present automatic stay to permit re-issuance of the tax deed by an Illinois circuit court. The new hearing on the tax-deed application would be largely duplicative of the original, unless new state-law issues needed to be adjudicated. Such a need presented itself in *In re Halas,* 194 B.R. 605 (Bankr.N.D.Ill.1996), where Judge Schmetterer refused to annul the automatic stay to validate the null and void tax deed, instead prospectively modifying the stay to permit another state court hearing on the application. In that instance, the partially repetitious prove-up hearing was necessary, though, so that before a new, valid tax deed issued, a non-debtor purchaser holding a judicial deed from a foreclosure sale held *prior* to the filing of the tax-deed petition could be properly noticed and included by the tax-sale purchaser, who failed to make an attempt to learn the outcome of the pending foreclosure sale of which it had knowledge. *See id.* at 609–11, 616. Although the redemption period had already expired during the course of the chapter 13 case, the unresolved legal issues concerning proper notice prior to the issuance of an Illinois tax deed weighed against annulling the stay to validate the null and void tax deed, especially since the tax deed would trump the judicial deed. *See id.* at 616–17.

Yet another factor shifts the balancing of the equities against annulment where (1) the holder of the certificate of purchase willfully violates the stay in obtaining a tax deed and (2) section 22–85 of the Illinois Property Tax Code becomes applicable after the redemption period expires. Although not recognized by the parties to the instant motion, this provision provides in relevant part:

> Unless the holder of the certificate purchased at any tax sale under this Code takes out the deed in the time provided by law, and records the same within one year from and after the time for redemption expires, the certificate or deed, and the sale on which it is based, shall, after the expiration of the one year period, be absolutely void with no right to reimbursement. If the holder of the certificate is prevented from obtaining a deed by injunction or order of any court, or by the refusal or inability of any court to act upon the application for a tax deed, or by the refusal of the

---

14. *See* sections 21–350 and 21–385 of the Illinois Property Tax Code.

clerk to execute the same deed, the time he or she is so prevented shall be excluded from computation of the one year period.

35 Ill. Comp. Stat. Ann. 200/22–85 (West 1996); *see also In re Bates,* 270 B.R. 455, 461, 468–69 (Bankr.N.D.Ill.2001). Thus, if S.I. Boo failed to obtain and record a *valid, enforceable* tax deed within one year after the expiration of the redemption period (here, within one year after February 7, 2000, as extended by § 108(b) of the Bankruptcy Code), it lost its *in rem* rights to the Property. *See In re Winters,* 1995 WL 453053, at *4 (N.D.Ill.1995). Without production of a valid certificate of purchase, the tax-sale purchaser could no longer obtain a tax deed from the county clerk. 35 Ill. Comp. Stat. Ann. 200/21–240, 22–40(a) (West 1996 & Supp.2001). If section 22–85 were applicable, Giddens' inability to redeem the taxes would then no longer weigh in favor of annulment, because the Property would no longer be stuck in the awkward interim period where neither one would have a clear entitlement to hold the legal title. The benefit to Giddens of the null and void tax deed could be realized, since she no longer had any legal obligation to redeem the amount represented in the certificate of purchase, and S.I. Boo could no longer use it to apply for a tax deed.

The question remains, nonetheless, whether section 22–85 of the Illinois Property Tax Code became applicable by its own terms due to the passage of one year after the redemption-period expiration date. The automatic stay in a bankruptcy case obviously prevents a tax-sale purchaser from filing and prosecuting an application for an order issuing a tax deed, so the one-year period would need to be calculated without use of any time during which Giddens was under the protection of the Bankruptcy Code. Adding up such time is no easy task, as her present case is the sixth chapter 13 filed since the one giving rise to this controversy. The lapses of time between these case dismissals and subsequent filings, nevertheless, were as follows: April 24, 2000 to May 15, 2000; November 27, 2000 to March 13, 2001; July 9, 2001 to October 10, 2001; November 26, 2001 to January 22, 2002; and April 15, 2002 to October 23, 2002. They total between fourteen and fifteen months' worth of time—more than enough for S.I. Boo's time to obtain a valid tax deed to have expired under section 200/22–85. Furthermore, the equities would shift against annulment and in favor of a chapter 13 debtor who was the victim of a willful violation of the stay, because the null and void tax deed no longer creates the awkward interim period of uncertainty once the tax-sale purchaser forfeits its *in rem* rights.

Citicorp's equitable arguments and request for annulment rely to a great extent on its own lack of knowledge regarding Giddens' interest in the Property during her 1999 and subsequent chapter 13 filings. Citicorp also apparently never violated the automatic stay in any of her cases. Be that as it may, the past behavior of another becomes relevant when Citicorp demands validation of the acts of this other entity as a willful stay violator in a prior case. In *In re Halas,* 194 B.R. 605 (Bankr.N.D.Ill.1996), Judge Schmetterer refused to annul the stay to validate a tax deed after concluding that the certificate-of-purchase holder *should have* looked for a second, subsequent chapter 13 filing but had no actual knowledge of that debtor's case until after the tax deed issued. *See id.* at 610, 616. Here, the certificate-of-purchase holder had both actual and constructive knowledge of Giddens' 1999 bankruptcy case. In fact, Citicorp itself, in addition to S.I. Boo, had constructive notice that the tax deed on which it relied

was issued less than four months after someone claiming an unrecorded title to the Property filed a bankruptcy petition. It should have researched Illinois real property law enough to know that the recording of a deed is technically not what transfers legal title to property. Therefore, equity does not clearly favor annulment of the automatic stay in bankruptcy case number 99 B 37860.

As one final noteworthy matter, the Court underscores that it is ruling only on the narrow issues presented by Citicorp's motion. At this junction, it has no need to express an opinion on Cody's (or derivatively, Citicorp's) ability to prevail over Giddens in a quiet-title action as a first-recording, subsequent purchaser without knowledge of the transfer from the DiVitos to Giddens. *See* 765 Ill. Comp. Stat. Ann. 5/1 & 5/30 (West 1993); *In re Application of the Cook County Treasurer*, 185 Ill.2d 428, 235 Ill.Dec. 910, 706 N.E.2d 465, 470 (1998); *e.g., Banco Popular v. Beneficial Systems*, 335 Ill.App.3d 196, 269 Ill.Dec. 389, 780 N.E.2d 1113 (2002). It is sufficient to decide that whatever interest Giddens still has in the Property at this point is property of her bankruptcy estate pursuant to § 541(a) and § 1306(a) and is protected by § 362(a).

### B. *Motion for Order Directing Citicorp to File Proof of Claim for Amount in Certificate of Purchase*

█ In response to Citicorp's motion for annulment, Giddens affirmatively requests that Citicorp be compelled to file a proof of claim for the amount represented by the certificate of purchase, so that in her current chapter 13 plan payments Giddens can essentially treat Citicorp as the creditor holding the Property tax lien.

Aside from the fact that Citicorp has never held the certificate of purchase representing the transfer of Cook County's tax lien to the public-tax-sale purchaser,

*see In re Winters*, 1995 WL 453053, at *4–*5 (N.D.Ill.1995), the request must be denied on legal grounds. The federal courts in Illinois have disagreed on whether the holder of a certificate of purchase holds a "claim" (as defined in § 101(5) of the Bankruptcy Code) that can be treated in a chapter 13 plan. *Cf. In re Milne*, 185 B.R. 277, 279 (Bankr.N.D.Ill.1995), *aff'd, Milne v. Johnson (In re Milne)*, 185 B.R. 280 (N.D.Ill.1995); *In re Murray*, 276 B.R. 869, 874–75 (Bankr.N.D.Ill.2002); *In re Bates*, 270 B.R. 455, 461, 463–65 (Bankr. N.D.Ill.2001) (tax-sale purchaser has regular secured claim in bankruptcy case, at least until redemption period expires) *with In re Blue*, 247 B.R. 748, 751–52 (Bankr. N.D.Ill.2000) ("According to the Illinois Supreme Court, the Illinois Property Tax Code ... precludes any debtor/creditor relationship between the landowner and the purchaser of delinquent taxes."). Even the less restrictive holding of *Bates*, however, denies that the certificate-of-purchase holder has any claim against (or "right to payment" from) the debtor in a chapter 13 case when the redemption period expired *before such case was ever filed.* Thus, not even S.I. Boo has a claim against Giddens in the present chapter 13 case, because here the redemption period expired on February 7, 2000. Moreover, S.I. Boo's certificate of purchase entitling it to the redemption amount (in lieu of a tax deed) became null and void one year after it failed to obtain a *valid* tax deed, as discussed *supra.*

Furthermore, Giddens' request that Citicorp be compelled to file a proof of claim for the unpaid property taxes is denied.

The foregoing opinion constitutes findings of fact and conclusion of law pursuant to Bankruptcy Rules 9014 and 7052. A separate order under Bankruptcy Rule 9021 will follow.

***ORDER***

Having read the motion filed in this matter, having received and examined the memoranda of law submitted by the parties in support of their respective positions, having heard the arguments of counsel, and having been fully advised in the premises, the Court hereby finds as follows:

1. Citicorp's motion to annul the automatic stay is denied.

2. The tax deed issued to S.I. Boo on March 27, 2000, for the property located at 6201–03 South Hermitage Avenue, Chicago, Illinois 60636 is null and void *ab initio* as a violation of the automatic stay in bankruptcy case number 99 B 37860.

3. Giddens' motion to compel Citicorp to file a proof of claim for the amount represented by the certificate of purchase is denied.