In re Jose A. CAMACHO and Deborah
A. Camacho, Debtors.

Jose A. Camacho and Deborah
A. Camacho, Plaintiffs,

v.

Homeq Servicing Corporation, f/k/a
The Money Store, Defendant.

Bankruptcy No. 03–68259.
Adversary No. 04-4107.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

June 30, 2004.

Danette Gambrell McLemore, Detroit, MI, for debtors.

Kelly A. Myers, Esq., Lansing, MI, for creditor.

***OPINION DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDG- MENT AND GRANTING DEFEN- DANT'S MOTION FOR SUMMARY JUDGMENT***

PHILLIP J. SHEFFERLY, Bankruptcy Judge.

*Introduction*

On January 12, 2004, Jose A. Camacho and Deborah A. Camacho, the Debtors in this Chapter 13 bankruptcy case, filed a complaint for determination of the validity of a lien. The complaint seeks entry of a judgment in favor of the Debtors and against the Defendant, Homeq Servicing Corporation, f/k/a The Money Store, determining the lien claimed by the Defendant in the Debtors' residence to be "void" and requesting that the Court order the Defendant to file a discharge of the mortgage or, alternatively, certify a judgment discharging the mortgage for filing with the Macomb County Register of Deeds. The Debtors and the Defendant filed cross motions for summary judgment, which were heard on June 16, 2004. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K), over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). For the reasons set forth in this opinion, the Court denies the Debtors' motion for summary judgment and grants the Defendant's motion for summary judgment.

*Facts*

The facts in this case are not in dispute. The Debtors own a single family residence located at 33109 Robeson, St. Clair Shores, Michigan. They granted a first mortgage on the residence to Standard Federal Bank. On August 12, 1998, Mr. Camacho executed a Fixed Rate Note in the principal amount of $25,000 to Metropolitan Financial, Inc. Also, on the same day, an Allonge to Note was made by Metropolitan Financial, Inc., which changed the payee on the Fixed Rate Note to "TMS Mortgage, Inc., a New Jersey corporation, d/b/a The Money Store." The Fixed Rate Note was secured by a Mortgage on the residence granted the same day by both of the Debtors to Metropolitan Financial, Inc. The Mortgage, however, indicates that when "recorded," the Mortgage was to be "Mail[ed] to THE MONEY STORE." All parties agree the Mortgage was not recorded at that time.

The Debtors made mortgage payments to The Money Store during 1999. On Octo-

ber 4, 1999, the Debtors filed a Chapter 13 bankruptcy petition, case No. 99–55532. The Debtors listed both Standard Federal Bank and The Money Store as secured creditors on their schedule D. On December 6, 1999, The Money Store filed a proof of secured claim. The Debtors' Chapter 13 plan treated the first mortgage of Standard Federal Bank as a secured claim under Class Two—Continuing Claims and Class Four—Arrearages on Continuing Claims. The plan treated the second mortgage of The Money Store as a secured claim under Class Two—Continuing Claims, but, unlike the Standard Federal Bank mortgage, the plan provided that payments to The Money Store would be made "direct" by the Debtors to The Money Store and not by the Chapter 13 trustee. In Section 1.D., the plan provided that "[u]pon confirmation . . . all property of the estate shall vest in the debtor [11 U.S.C. § 1327(b)]" and that "[a]ll secured creditors shall retain the liens securing their claims unless otherwise stated." The Debtors' Chapter 13 plan was confirmed on December 15, 1999. Both at the time of the filing of the Chapter 13 bankruptcy case and at the time of confirmation as well, the Mortgage was unrecorded.

On September 26, 2000, the Defendant filed with the Macomb County Register of Deeds an Affidavit of Lost Deed of Trust/Mortgage, which was executed by Linda Wheeler on August 23, 2000. The Affidavit recited that Ms. Wheeler was the vice president for TMS Mortgage, Inc., a New Jersey corporation, d/b/a The Money Store. The Affidavit further recited that the Defendant is the "owner, holder and entity entitled to enforce a certain Deed of Trust/Mortgage dated 8/12/98, and made by Jose Camacho for property located at 33109 Robeson, St. Clair Shores, MI 48082." The Affidavit further recited that the Defendant was in possession of the Mortgage and was "entitled to enforce it

when loss of possession occurred" and that the "loss of possession" was not the result of a transfer by the Defendant or a lawful seizure. The Affidavit concluded that the Defendant "cannot reasonably obtain possession of the Deed of Trust/Mortgage because it has been lost, and its whereabouts cannot be determined" and, therefore, the Affidavit was being filed for the purpose of proving the terms of the Defendant's right to enforce the Mortgage. The filing of the Affidavit with the Macomb County Register of Deeds took place nearly a year after confirmation of the Debtors' plan but during the time in which the Debtors' were obligated to make payments under their Chapter 13 plan.

While the Chapter 13 case was still pending, on March 2, 2001, a Corporation Assignment of Mortgage was recorded with the Macomb County Register of Deeds, which recited that Metropolitan Financial, Inc., the mortgagee, assigned the Mortgage to TMS Mortgage, Inc., d/b/a The Money Store. The Assignment is dated January 8, 2001.

After confirmation of their Chapter 13 plan, the Debtors made only a few direct payments with respect to the Mortgage and defaulted under its terms. On March 14, 2003, the Debtors' Chapter 13 case was dismissed for failure of the Debtors to remit income tax refunds to the Chapter 13 Trustee.

On May 2, 2003, the Debtors filed a second bankruptcy petition, case No. 03–54868. This case was filed under Chapter 7 of the Bankruptcy Code. On schedule F, the Debtors listed the Defendant as the holder of an unsecured claim in the amount of $25,000.00 against Mr. Camacho. On schedule B, the Debtors listed the residence on Robeson as their home and indicated that it was subject only to a lien or mortgage in favor of Standard Fed-

eral Bank. At the hearing on June 16, 2004, counsel for the Debtors explained that the reason for listing this claim as unsecured in the Debtors' second bankruptcy case was because the Debtors had now learned that the Mortgage had never been recorded and that the only evidence that the Defendant's claim was secured consisted of the Affidavit that was filed on September 26, 2000 and that was, according to the Debtors, a nullity because it was filed in violation of the automatic stay. The Debtors believed that the claim was therefore unsecured.

During the Chapter 7 bankruptcy case, no action was taken by either the Chapter 7 Trustee or the Debtors to request any relief with respect to the Affidavit that the Defendant had filed on September 26, 2000, during the pendency of the first bankruptcy case. Notwithstanding the fact that its claim was listed on the schedules as unsecured, the Defendant filed in the Chapter 7 bankruptcy case a proof of claim on July 15, 2003, which stated that the Defendant was the holder of a secured claim in the amount of $38,133.23 and attached to it a copy of the Fixed Rate Note, the Mortgage, and the Assignment. No action was taken by the Chapter 7 trustee or the Debtors during the Chapter 7 case to object to this proof of secured claim. On June 30, 2003, the Chapter 7 Trustee filed a no asset report and, on August 28, 2003, the Debtors received a discharge in the Chapter 7 bankruptcy case. The Debtors continued to reside in the Robeson residence and, in the Chapter 7 bankruptcy case, claimed as exempt their interest in it.

After the Chapter 7 bankruptcy case, the Debtors defaulted on their mortgage with Standard Federal Bank. As a result, Standard Federal Bank scheduled a foreclosure sale to take place on October 17, 2003. To avert the foreclosure sale, the Debtors filed a third bankruptcy case on October 14, 2003, this time another Chapter 13 petition, case No. 03–68259 (the current case). The Debtors' schedules listed only two creditors: Standard Federal Bank as a secured creditor and BiCounty Hospital as an unsecured creditor in the amount of $579.00. The Defendant was placed on the matrix but not listed as a creditor. At the hearing on the cross motions for summary judgment, the Debtors' counsel explained that this listing was for notice purposes only. The Debtors believed that the Mortgage signed on August 12, 1998 had never been perfected by recording and that the Affidavit filed on September 26, 2000 was void because it had been filed in violation of the automatic stay under § 362 during the Debtors' first Chapter 13 case. Accordingly, the Debtors considered the Defendant's claim to be at most an unsecured claim, and that unsecured claim, according to the Debtors' counsel, was discharged during the Chapter 7 bankruptcy case. Therefore, when the third bankruptcy case was filed on October 14, 2003, the Debtors did not list the Defendant as a holder of a claim, although notice was provided to the Defendant of the Chapter 13 filing.

On November 13, 2003, the Defendant filed a proof of secured claim in the third bankruptcy case in the amount of $39,688.51 and again attached to it the Fixed Rate Note, the Mortgage, and the Assignment. On January 14, 2004, the Debtors filed this complaint to determine the validity of the Defendant's lien.

The Debtors filed a motion for summary judgment. In it, they make two arguments. First, the Debtors argue that the mortgage lien claimed by the Defendant arises from the Mortgage granted by the Debtors to Metropolitan Financial, Inc. on August 12, 1998. That Mortgage was not recorded. Instead, an Affidavit of lost

mortgage was recorded on September 26, 2000. Because that occurred at a time when the Debtors were in their first bankruptcy case, it was filed in violation of the automatic stay and therefore is void. Second, the Debtors argue that, even if the filing of the Affidavit did not violate the automatic stay and is not rendered void, nevertheless, the Defendant had no interest in the Mortgage at the time that the Affidavit was recorded on September 26, 2000 because the Assignment was not made until January 8, 2001 nor recorded until March 2, 2001. Accordingly, because the Assignment was not made until after the Affidavit was filed, the Debtors argue that the Affidavit could not perfect an interest in favor of the Defendant.

The Defendant also makes two arguments. First, the Defendant contends that the filing of the Affidavit, although in violation of the automatic stay, is not void but instead is voidable under applicable Sixth Circuit case law. Because of the serial filings by the Debtors and the other circumstances of this case, the Defendant argues that the Court should not hold the Affidavit to be void but should instead find the Mortgage to be perfected. Second, the Defendant contends that § 549(d)(1) of the Bankruptcy Code sets a limitations period for challenging the recording of the Affidavit. That limitations period expired in the Debtors' first Chapter 13 case. Therefore, the Defendant concludes that the Debtors may not now attack the recording. Because the recording of the Affidavit is the act that perfected the Mortgage, then the Debtors' motion should be denied.

### Standard for Summary Judgment

Fed.R.Civ.P. 56(c) for summary judgment is incorporated into Fed. R. Bankr.P. 7056(c). Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. 2505. A "genuine" issue is one where no reasonable fact-finder could return a judgment in favor of the non-moving party. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir.1998) (citing *Anderson*, 447 U.S. at 248, 100 S.Ct. 2124). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted." *Cox v. Kentucky Dept. of Transportation*, 53 F.3d 146, 149–50 (6th Cir.1995) (internal quotation marks and citation omitted).

### Analysis

■ Because all parties agree that the Mortgage itself was never recorded, the first issue to be addressed is the efficacy of the filing of the Affidavit under applicable Michigan real property law. In Michigan, the filing of an affidavit of lost document is permissible. *See* Mich. Comp. Laws Ann. § 565.451a ("An affidavit stating facts . . . which may affect the title to real property in this state . . . may be recorded . . . ."). If the affidavit includes a description of the land that may be affected by the facts stated in it or refers, by liber and page, to a recorded deed, will, mortgage, or other instrument affecting title to the property, which contains a full and adequate description of the land, such affidavit must be accepted and recorded by the register of deeds of the county where such affidavit is

offered. *See* Mich. Comp. Laws Ann. § 565.451c ("The affidavit shall include a description of the land . . . ."); Mich. Comp. Laws Ann. § 565.452 ("The register of deeds . . . shall receive and record" the affidavit.). The Affidavit filed by the Defendant on September 26, 2000 complies with the statutory requirements of Michigan law. It was properly accepted and recorded by the Macomb County Register of Deeds. Under Mich. Comp. Laws Ann. § 565.453, the Affidavit "shall be prima facie evidence of the facts and circumstances therein contained." *Id.* § 565.453. The facts recited in the Affidavit, and given prima facie evidentiary value under Michigan law, were not controverted by any evidence submitted in connection with the cross motions for summary judgment. The statements contained in the Affidavit must be taken as true. The Defendant is both the holder of the Mortgage and the entity entitled to enforce it as of September 26, 2000. From and after the date of recording the Affidavit, any purchaser of the Robeson property was placed on notice of the Defendant's Mortgage. Under Michigan's race-notice statute, Mich. Comp. Laws Ann. § 565.29, the recording of the Affidavit perfected the Defendant's Mortgage. *Id.* § 565.29 ("Every conveyance of real estate . . . which shall not be recorded . . . shall be void as against any subsequent purchaser in good faith and for a valuable consideration . . . whose conveyance shall be first duly recorded.").

Although the Debtors point to the March 2, 2001 recording of the Assignment, and assert that it evidences the date on which the Defendant's interest in the Mortgage first arose, the Assignment does not contradict the Affidavit in any way. It specifically refers to the date of September 26, 2000, which is the date the Affidavit was filed. It says nothing inconsistent with the assertion in the Affidavit that the Defendant had an interest in the Mortgage and was entitled to enforce it as of September 26, 2000. However, even if the Court were to assume that the date of the Assignment, March 2, 2001, and not the date of the Affidavit, September 26, 2000, was the first date on which the Defendant held an interest in the Mortgage, the result is the same. Under Michigan's race-notice statute, the recording of the Assignment, together with the statement in the Affidavit that the Mortgage had been lost, served to perfect the Mortgage on March 2, 2001 even if it had not previously been perfected. From that date forward, any prospective purchaser of the Robeson property was placed on notice of the Mortgage and the Defendant's interest in it.

■ The second issue is whether the filing of this Affidavit on September 26, 2000 violated the automatic stay of § 362 of the Bankruptcy Code, which was in effect at that time. Among the acts stayed by § 362(a) on the filing of a bankruptcy petition are:

> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title . . . .

The filing of the Affidavit on September 26, 2000 appears to be an act within the prohibitions contained in § 362(a)(4) and (5). However, the real question is not whether the act of filing the Affidavit to perfect the Mortgage is a type of act covered by these sections of the Bankruptcy Code but, rather, whether the automatic stay remained in effect as to the Robeson property on September 26, 2000.

Section 362(c)(1) provides that the stay of an act against property of the estate under § 362(a) "continues until such property is no longer property of the estate

.... " The Robeson property was property of the estate during the Debtors' first Chapter 13 case under § 541 and § 1306 of the Bankruptcy Code. Under § 1327(b), the "confirmation of a plan vests all of the property of the estate in the debtor". It would appear then that, as of December 15, 1999, the date the Chapter 13 plan was confirmed, the Robeson property vested in the Debtors and was no longer property of the estate. That is consistent with the language set forth in Section 1.D. of the Debtors' Chapter 13 plan, which also recited that "[u]pon confirmation of the Plan, all property of the estate shall vest in the debtor". Since the Robeson property vested in the Debtors as of confirmation and, therefore, was no longer property of the estate, the automatic stay provisions of § 362(a)(4) were no longer applicable to the Robeson property as of that date. Accordingly, on September 26, 2000, when the Defendant filed the Affidavit, it did not take an act against property of the estate in violation of the automatic stay provisions of § 362(a)(4) because the Robeson property was no longer property of the estate.

However, even though the automatic stay was no longer in effect with respect to acts against property of the *estate* because of the application of § 362(c)(1), the stay did remain in effect with respect to acts against property of the *Debtors* under § 362(c)(2) as of September 26, 2000 because the bankruptcy case had not yet been closed or dismissed, nor had a Chapter 13 discharge been granted to the Debtors. The Court agrees with the Debtors that the filing of the Affidavit was an act to perfect an interest against the Robeson property, which was property of the Debtors, to secure a claim against the Debtors that arose before the commencement of the Chapter 13 case. As such, it remained stayed under § 362(a)(5) notwithstanding the fact that the Robeson property was no longer property of the estate. Having found that the act of filing the Affidavit was stayed under § 362(a)(5), the next issue becomes whether the act was void or voidable.

■ In *Easley v. Pettibone,* 990 F.2d 905 (6th Cir.1993), the U.S. Court of Appeals for the Sixth Circuit rejected decisions from other circuits that hold that acts taken in violation of the automatic stay are void *ab initio* and, instead, concluded that such acts are only voidable. The court held that "actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances." 990 F.2d at 911. The court then suggested that:

> only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, will the protections of section 362(a) be unavailable to the debtor.

*Id.* at 911. The *Easley* court then "cautioned that 'any equitable exception to the stay must be applied sparingly.'" *Id.* (quoting *In re Smith,* 876 F.2d 524, 527 (6th Cir.1989)).

■ In this case, the Court concludes that there are numerous equitable circumstances that militate in favor of the Defendant and against the Debtors. The first of these circumstances is that the Debtors' first Chapter 13 case was filed on October 4, 1999 and continued through March 14, 2003 without the Debtors taking any action to challenge the filing of the Affidavit as a violation of the stay. In fact, the Debtors' schedule D in that case listed the Defendant as a secured creditor. Further, the Defendant filed a proof of secured claim in that case, which was not objected to by the

Debtors. Even more compelling, the Debtors' Chapter 13 plan treated the Defendant as a secured claimant and made a specific provision for payments of the Mortgage to the Defendant for its "2nd mortgage on the residence". Moreover, the plan specifically provided that secured creditors, including the Defendant, "shall retain the liens securing their claims". Clearly, the Debtors deliberately treated the Defendant as the holder of a secured claim in the first bankruptcy case and induced the Defendant to accept the treatment provided by the Chapter 13 plan by treating the Defendant as the holder of a secured claim. Having enjoyed the benefits of the Chapter 13 plan based upon their treatment of the Defendant's secured claim in the first Chapter 13 case, it would be inequitable to now permit the Debtors to void the filing of the Affidavit during that case, which had the effect of perfecting the Defendant's Mortgage on the property.

Although the Debtors contend that they did not know of the stay violation during the first bankruptcy case, and therefore did not take any action on account of it, they certainly knew of it by the time that they filed their second bankruptcy petition on May 2, 2003. When they filed that bankruptcy case under Chapter 7, the Debtors listed the Defendant as the holder of an unsecured claim on schedule F. The reason for this, as explained by the Debtors' counsel at the June 16, 2004 hearing, was because the Debtors had now learned that the Mortgage had not been recorded and that, instead, only the Affidavit had been recorded after the commencement of the first bankruptcy case. Although that may explain why the Debtors took no action in the first bankruptcy case, it does not explain why the Debtors took no action in the second bankruptcy case to address the stay violation. The Defendant obviously believed that it was still the holder of

a secured claim during the second bankruptcy case because it filed a proof of secured claim in the Chapter 7 case on July 15, 2003 in the amount of $38,133.23. Neither the Debtors nor the Chapter 7 trustee filed any objection to that proof of claim. The Debtors received their discharge on August 28, 2003 and, on September 8, 2003, the Chapter 7 case was closed without any objection having been filed to the secured proof of claim of the Defendant.

Although the order confirming the Chapter 13 plan in the first bankruptcy case on December 15, 1999 effectively adjudicated the Defendant to be the holder of a secured claim in that case (*see* § 1327(a)), it is also clear that the absence of objection to the Defendant's proof of claim in the Chapter 7 bankruptcy case, had the legal effect of deeming the claim to be allowed under § 502(a) of the Bankruptcy Code in that case. Thus, to permit the Debtors in their third bankruptcy case to now request that the filing of the Affidavit be voided would have the effect of undermining two prior adjudications, one in the first Chapter 13 case and one in the Chapter 7 case, that held the Defendant's proof of claim to be an allowed secured claim. To do so now would be especially unfair to the Defendant in the Chapter 7 case because the Chapter 7 discharge of the Debtors effectively discharged any unsecured claim that the Defendant would still have. Had the Debtors successfully challenged the proof of secured claim of the Defendant in the Chapter 7 case based on the theory that the Affidavit was void, at least the Defendant would have had the opportunity to participate in that bankruptcy case as an unsecured creditor. To now void the filing of the Affidavit would effectively strip the Defendant of rights to participate in any meaningful way in any of the Debtors' three bankruptcy cases.

There is an additional circumstance to consider in this case. The automatic stay violation took place during the Debtors' first Chapter 13 case. That case was dismissed on March 14, 2003. The dismissal of that case has certain statutory consequences under § 349 of the Bankruptcy Code. Section 349(b) provides that the dismissal of a case, among other things, reinstates certain transfers that were avoided during the bankruptcy case, and vacates certain orders and judgments entered during the bankruptcy case. Under § 349(b)(3), dismissal of a bankruptcy case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." One authority describes the purpose of this section of the Bankruptcy Code as follows: "The objective of section 349(b) is to restore all property rights, as far as practicable, to the positions they occupied at the commencement of a case that was dismissed under one of the operative sections of Title 11." 3 *Collier on Bankruptcy,* ¶ 349.03[1] at 349–12 (15th ed. rev.2003)

> (footnote omitted). This stated goal is consistent with the legislative history to § 349(b). The objective of section 349(b) is to undo the title 11 case, insofar as practicable, and restore all property rights to the position they occupied at the beginning of such case.... [H]owever, [ ] the court is empowered to make the appropriate orders to protect rights acquired in reliance on the [title 11] case.

*Id.* ¶ 349.01[2] at 349–3 (internal quotation marks and footnote omitted) (citing H.R.Rep. No. 95–595 at 338 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6294) (other citations omitted).

Once the first Chapter 13 bankruptcy case was dismissed on March 14, 2003, then § 349(b) effectively wiped out the bankruptcy proceeding. It is in many respects as though the bankruptcy case never happened. There are circumstances where dismissal would not restore the prepetition status of property (e.g., where property has been transferred out of a bankruptcy estate to a bona fide purchaser), but the plain language of § 349(b) and the legislative history make it clear that the intention is to restore parties as much as possible to their status prior to the bankruptcy. If the Debtors during the first bankruptcy case had filed an action to avoid the Defendant's lien under § 544 or recover a post-petition transfer of property of the estate under § 549, and if such action was resolved favorably for the Debtors, the subsequent dismissal of the Chapter 13 case would have the effect of reinstating the transfers avoided under those sections.[1] Although § 349 does not specifically reference orders entered during a bankruptcy case by a bankruptcy court declaring an action taken in violation of the stay to be void, it would be inconsistent with the policies evinced by § 349(b) to have voided the filing of the Affidavit on September 26, 2000 during the first bankruptcy case, and then permit the Debtors to retain the Robeson property free and clear of the Defendant's Mortgage after dismissal of their Chapter 13 case for failure to comply with their own Chapter 13 plan. That would create a windfall to the Debtors. It would be inequitable. *See United States v. Sanderfer (In re Sanderfer),* No. 02–17845, 1:03–CV–369, 2004 WL

---

1. This feature of § 349(b)(1)(B), although ultimately supporting the Defendant's position, undermines the Defendant's argument that it is now too late for the Debtors to challenge the filing of the Affidavit because of the expiration of the two year statute of limitations of § 549(d)(1). As § 349(b)(1)(B) makes clear, a successful and timely action brought by the Debtors in their first case under § 549(d)(1) would be of no avail to them now.

370768 at *6 (E.D.Tenn., Jan.6, 2004) (finding the filing of an IRS tax lien during the pendency of a prior chapter 13 case was voidable under *Easley v. Pettibone,* and under § 349, the lien became perfected upon dismissal of the case when the property re-vested in the debtor); *In re Giddens,* 298 B.R. 329, 336–41 (Bankr.N.D.Ill. 2003) (allowing an act taken in violation of the stay in a prior chapter 13 case to be challenged in a subsequent case, and finding that act was a violation of the stay and "null and void *ab initio*" but nevertheless entertaining the creditor's motion to annul the stay and balancing the equities in deciding to deny the motion).

The Debtors' request to void the filing of the Affidavit in violation of § 362(a) would have been more compelling in the first bankruptcy case, and perhaps even in the second bankruptcy case. As of the moment in time when this third bankruptcy case was filed on October 14, 2003, three years had passed since the Affidavit was filed, the first case in which the alleged stay violation took place had been dismissed, and the second case had been filed and proceeded to closing with an allowed secured claim in favor of the Defendant. To permit the Debtors to now void the filing of the Affidavit would violate fundamental principles of finality in judicial proceedings. At some point, the Debtors' ability to challenge the filing of the Affidavit for violating the stay in another bankruptcy case must come to a close. That time has arrived. That is particularly true when the secured creditor in this case went through two entire bankruptcy cases without having a challenge to its status as a mortgage lien claimant.

While the Court recognizes that *Easley* carefully limits the circumstances in which actions taken in violation of the stay are not voided, the Court considers this to be the case that proves the exception to the rule. The fact that this is a third bankruptcy case, the violation of the stay took place in the first case, the Debtors treated the Defendant's claim as a secured claim in the first case, that case was subsequently dismissed, the Defendant's proof of secured claim was deemed allowed in the second case, and the voiding of the filing of the Affidavit would create a windfall for the Debtors, all combine in this case to present sufficient equitable circumstances to invoke the exception in *Easley.* There are no genuine issues of material fact in this case. The Court concludes as a matter of law that the filing of the Affidavit on September 26, 2000 should not be voided and is effective under Michigan law to perfect the Defendant's Mortgage upon the Robeson property of the Debtors. Accordingly, the Debtors' motion for summary judgment is denied and the Defendant's motion for summary judgment is granted. The Court will enter an order consistent with this opinion.